UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
WESTERN DIVISION

CIVIL ACTION NO._____

| | |
|---|---|
| **Jane Doe,** ) | |
|         **Plaintiff** ) | |
| v. ) | |
| ) | **COMPLAINT** |
| ) | |
| ) | |
| **Gerald Fournier, as Superintendent of** ) | |
| **Palmer Public Schools, Town of Palmer,** ) | |
| **Town of Palmer School Committee, Gary** ) | |
| **A. Blanchette as a Member of the Town of** ) | |
| **Palmer School Committee, Mary A.** ) | |
| **Salzmann, as a Member of the Town of** ) | |
| **Palmer School Committee, David M.** ) | |
| **Lynch, as a Member of the Town of** ) | |
| **Palmer School Committee, James St.** ) | |
| **Amand, as a Member of the Town of** ) | |
| **Palmer School Committee, Robert** ) | |
| **Janasiewicz, as a Member of the Town of** ) | |
| **Palmer School Committee, Maureen R.** ) | |
| **Gallagher, as a Member of the Town of** ) | |
| **Palmer School Committee, Bonny** ) | |
| **Rathbone, as Former Principal of Palmer** ) | |
| **High School and Patrick Van Amburgh,** ) | |
| ) | |
|         **Defendants** ) | |

## PARTIES

1. Jane Doe is an individual who is a former student at Palmer High School.

2. The Town of Palmer (the "Town") is a Massachusetts municipal corporation whose principal place of business is 4417 Main Street, Palmer, Massachusetts.

3. The Town of Palmer School Committee is a municipal body whose principal place of business is 24 Converse Street, Palmer, Massachusetts.

4. Gary A. Blanchette, as a Member of the Town of Palmer School Committee, is an individual, whose principal place of business is 24 Converse Street, Palmer, Massachusetts.

5. Mary A. Salzmann, as a Member of the Town of Palmer School Committee, is an individual, whose principal place of business is 24 Converse Street, Palmer, Massachusetts.

6. David M. Lynch, as a Member of the Town of Palmer School Committee, is an individual, whose principal place of business is 24 Converse Street, Palmer, Massachusetts.

7. James St. Amand, as a Member of the Town of Palmer School Committee, is an individual, whose principal place of business is 24 Converse Street, Palmer, Massachusetts.

8. Robert Janasiewicz, as a Member of the Town of Palmer School Committee, is an individual, whose principal place of business is 24 Converse Street, Palmer, Massachusetts.

9. Maureen R. Gallagher, as a Member of the Town of Palmer School Committee, is an individual, whose principal place of business is 24 Converse Street, Palmer, Massachusetts.

10. Gerald Fournier ("Dr. Fournier"), as Superintendent of Palmer Public Schools, is an individual, whose principal place of business is 24 Converse Street, Palmer, Massachusetts.

11. Bonny Rathbone ("Ms. Rathbone"), the Principal of Palmer High School at the relevant times, is an individual, whose principal place of business is 4105 Main Street, Palmer, Massachusetts.

12. Patrick Van Amburgh ("Mr. Van Amburgh") is an individual with a last known address at 21 Dogwood Hills Road, Newburgh, New York.

13. The above referenced Town of Palmer School Committee and each individual Member in their capacity as Member of the Town of Palmer School Committee will be referred to collectively as the "School Committee".

14. The above referenced defendants will be referred to collectively as "the Defendants".

## JURISDICTION

15. The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 [and supplemental jurisdiction], as Jane Doe is asserting claims arising under the laws of the United States, including Title IX of the Education Amendments of 1972, 20 U.S.C. §§ 1681-1688 ("Title IX"), and 42 U.S.C. § 1983, and related state law claims.

16. Venue is proper in the Western Section of the District of Massachusetts pursuant to 28 U.S.C. § 1391(b) because most of the parties reside in this District and the events giving rise to this action occurred within this District.

## FACTS

17. Mr. Van Amburgh was hired as a guidance counselor at Palmer High School on or around August 29, 2005.

18. In or around 2006, Mr. Van Amburgh also was appointed by Palmer High School as an Assistant Football Coach.

19. According to the Palmer High School website, the "primary function of the Guidance staff is to help the student plan for the future and survive the present. Counselors are available to assist students to understand themselves so that educational and vocational planning will be based upon sound information. The Guidance office is the place where students can go and talk about themselves."

20. Mr. Van Amburgh was very popular among many students at Palmer High School.

21. Mr. Van Amburgh was very friendly with students at Palmer High School, particularly female students.

22. Mr. Van Amburgh frequently entertained female students in his office, often times with the door closed.

23. Mr. Van Amburgh friended numerous female Palmer High School students, former female students and other young girls on Facebook.

24. In or around September 2006, Mr. Van Amburgh was identified in connection with a police investigation of an alleged rape of a student by a teacher at Palmer High School ("2006 Police Investigation").

25. In the 2006 Police Investigation it was reported that Mr. Van Amburgh had sex with a Palmer High School student.

26. Some or all of the Defendants were advised or otherwise learned of the sexual allegations revealed in the 2006 Police Investigation regarding Mr. Van Amburgh.

27. Mr. Van Amburgh denied that he had sex with a student, but admitted to failing to maintain proper boundaries with students and to using poor judgment.

28. Mr. Van Amburgh admitted in connection with the 2006 Police Investigation that "he had to rethink the boundaries he had originally set with students" and "realized that he can not keep a friend type relationship with the students."

29. Mr. Van Amburgh stated in connection with the 2006 Police Investigation that he "no longer allows the relaxed atmosphere with students."

30. Palmer High School officials or administrators failed to perform any reasonable or adequate investigation of the allegations that Mr. Van Amburgh had sex with at least one student.

31.     It was the perception of at least one law enforcement official that Palmer High School officials simply wanted to "sweep the situation under the rug" instead of dealing with it.

32.     Following the 2006 Police Investigation, Mr. Van Amburgh did not change his conduct and dealings with students.

33.     Mr. Van Amburgh openly failed to maintain the proper boundaries with students.

34.     Mr. Van Amburgh bragged about his conquests of female students.

35.     Mr. Van Amburgh bragged about the fact that he and another Palmer High School employee had a contest to see who could sleep with the most female students.

36.     Mr. Van Amburgh bragged about a belt system used by him and the other sex competition contestant in which they collected the belts of the students they slept with as trophies or proof of their conquests.

37.     Palmer High School officials had concerns about Mr. Van Amburgh's conduct, particularly as it related to female students.

38.     Dr. Fournier, Superintendent of Palmer Schools, has testified under oath that he believed that Mr. Van Amburgh was too "cozy" with female students.

39.     Dr. Fournier on one occasion observed a female student in Mr. Van Amburgh's office wearing a short skirt with her feet up on Mr. Van Amburgh's desk and took action to stop such conduct.

40.     Dr. Fournier observed numerous pictures of female students on Mr. Van Amburgh's office wall and directed him to remove the pictures.

41.     Dr. Fournier at one point sought to have Mr. Van Amburgh transferred from the Palmer High School to the Middle School, presumably based on the theory that Mr. Van Amburgh would be less likely to act inappropriately with younger female students.

42. Mr. Van Amburgh was not transferred to the Middle School and remained at Palmer High School.

43. Despite observations and concerns regarding Mr. Van Amburgh's conduct, neither Dr. Fournier nor the other Defendants sought to investigate Mr. Van Amburgh's conduct or to reprimand or remove him.

44. Upon information and belief, Mr. Van Amburgh monitored the ages of female students to ensure that his sexual conquests would not result in statutory rape charges.

45. Jane Doe turned seventeen years old in January of 2008, and in September of 2008 started her senior year at Palmer High School.

46. In October 2008, Mr. Van Amburgh began showing an unusual and unprofessional personal interest in Jane Doe.

47. Jane Doe had previously met with Mr. Van Amburgh on occasion with some of her friends about guidance issues and emotional support.

48. Jane Doe was the "stat girl" for the Palmer High School football team and had dealings with Mr. Van Amburgh in his capacity as an Assistant Football Coach for the team.

49. Mr. Van Amburgh, beginning in October 2008, talked to Jane Doe at football games and practices.

50. Mr. Van Amburgh would ask Jane Doe "why don't you write or call me?"

51. Mr. Van Amburgh obtained Jane Doe's cell phone number and began sending text messages to Jane Doe.

52. Mr. Van Amburgh sent numerous text messages to Jane Doe between October 3 and October 18, 2008.

53. Between October 3 and October 18, 2008, Mr. Van Amburgh and Jane Doe exchanged over 1,300 text messages.

54. Mr. Van Amburgh would initiate attempts to spend more and more time with Jane Doe and asked her to "hang out" with him outside of school.

55. In October 2008, Mr. Van Amburgh, via text messages, invited Jane Doe to his apartment.

56. Jane Doe went to Mr. Van Amburgh's apartment twice over the course of three or four days.

57. During Jane Doe's second visit to Mr. Van Amburgh's apartment, Mr. Van Amburgh had sexual relations with Jane Doe.

58. Following the second visit, Mr. Van Amburgh continued to invite Jane Doe back to his apartment for sex, which she declined.

59. Mr. Van Amburgh told Jane Doe to keep quiet about their relationship and he asked her to list his phone number in her phone under a fictitious name.

60. Jane Doe's mother ultimately learned that Jane Doe was taken advantage of by Mr. Van Amburgh.

61. Jane Doe's mother complained about the incident to Mary Salzman of the Palmer School Committee, and to Dr. Fournier, the Superintendant of the Palmer Public Schools.

62. Jane Doe and her mother then met with Dr. Fournier and the vice-principal at Palmer High School, Joe Bianca, and explained what had happened.

63. School officials encouraged Jane Doe not to go to the police with the story.

64. When Mr. Van Amburgh found out that Jane Doe and her mother were speaking with school administrators, Mr. Van Amburgh asked Jane Doe to lie and tell the school officials that they just talked about college and relationship issues.

65. On October 20, 2008, Gerald Fournier notified Mr. Van Amburgh that he was placing him on paid administrative leave pending an investigation regarding allegations of inappropriate interactions with students and misuse of work time.

66. Palmer school officials conducted an investigation.

67. On November 17, 2008, Dr. Fournier notified Mr. Van Amburgh by letter that, after investigation, he intended to terminate his employment and was suspending him without pay for, among other things, (a) having sexual intercourse with at least one current student; (b) inappropriate interactions/communications with several other female students; (c) misuse of work time, including thousands of text messages to female students; and (d) visiting inappropriate websites during school time in violation of the school district's Acceptable Use Policy.

68. Mr. Van Amburgh submitted a letter of resignation to Dr. Fournier on November 17, 2008.

69. Dr. Fournier accepted Mr. Van Amburgh's resignation by letter dated November 25, 2008.

70. Because of Mr. Van Amburgh's popularity with students and with certain staff members, Jane Doe was vilified and ostracized by various students and staff members.

71. Following Mr. Van Amburgh's termination, one teacher continued to keep a picture of Mr. Van Amburgh prominently displayed on her desk.

72. Following Mr. Van Amburgh's termination, Jane Doe lost many friends, was treated as an outcast, her grades suffered, her attendance suffered, her self esteem suffered, her relationship with her parents suffered and her relationship with many people she knew suffered.

73. Jane Doe has suffered and will continue to suffer emotional distress as a result of the actions and inactions Mr. Van Amburgh and the other Defendants.

74. On December 1, 2008, pursuant to 603 CMR 7.14(h), Dr. Fournier reported Mr. Van Amburgh's resignation to the Commissioner of the Commonwealth of Massachusetts Department of Elementary and Secondary Education ("DOE").

75. The DOE conducted its own independent investigation into the allegations against Mr. Van Amburgh.

76. By letter dated March 24, 2009, the DOE notified Mr. Van Amburgh that it had found probable cause to revoke his educator's license.

77. The DOE's March 24, 2009 letter listed similar bases for the revocation as set forth in Dr. Fournier's November 17, 2008 letter, including (a) having sexual intercourse with at least one current student; (b) inappropriate interactions/communications with several other female students; (c) misuse of work time, including thousands of text messages to female students; and (d) visiting inappropriate websites during school time in violation of the school district's Acceptable Use Policy.

78. On April 28, 2009, Mr. Van Amburgh requested a hearing with regard to the finding of probable cause to revoke his educator's license.

79. Jane Doe was subpoenaed to testify at the DOE hearing.

80. Although the DOE hearing was originally scheduled for January 2010, it was ultimately conducted in August and September 2010 due to the dilatory tactics of Mr. Van Amburgh and his counsel.

81. Jane Doe's emotional distress regarding testifying was escalated by the continued and intentional delays in the process by Mr. Van Amburgh and his counsel.

82. Jane Doe ultimately testified at the DOE hearing.

83. Jane Doe was intentionally subjected by Mr. Van Amburgh and his counsel to a humiliating and emotionally traumatizing process at the DOE hearing.

84. Following the hearing, in early 2011, the parties ultimately submitted requests for findings of fact and rulings of law in the matter of Mr. Van Amburgh.

85. The decision on the revocation of Mr. Van Amburgh's teaching license is currently under advisement with the DOE, and a decision is expected in the near future.

86. Jane Doe filed a claim with the Massachusetts Commission Against Discrimination (MCAD) on April 1, 2009, asserting claims under Massachusetts General Laws Chapters 151C and 214.

87. The MCAD received submissions from the parties and conducted an investigation into Jane Doe's claims.

88. The MCAD issued a Probable Cause Finding crediting the allegations made by Jane Doe in her MCAD Complaint.

## COUNT I
### Violation of M.G.L. c. 151C – All Defendants

89. Jane Doe reasserts and incorporates herein each and every allegation in the preceding paragraphs of this Complaint as if set forth fully in this count of the Complaint.

90. Jane Doe has satisfied the prerequisites to filing this action.

91. As described above, Defendants committed an unfair educational practice under M.G.L. Chapter 151C, when Mr. Van Amburgh sexually harassed and sexually abused Jane Doe, who at the time of the harassment and abuse was a minor student at Palmer High School.

92. As a matter of law, a high school student having sexual contact with her teacher or other school official constitutes sexual harassment or abuse.

93. The Defendants are strictly and vicariously liable for Mr. Van Amburgh's conduct in his capacity as guidance counselor at Palmer High School.

94. Based on the conduct of School Committee, the Town, Ms. Rathbone and Dr. Fournier as described above, the School Committee, the Town, Ms. Rathbone and Dr. Fournier failed to address or remedy adequately the sexual harassment by Mr. Van Amburgh, which had the purpose or effect of interfering with the education of Jane Doe by creating an intimidating, hostile, humiliating and sexually offensive educational environment.

95. As a result of Defendants' harassment, Jane Doe has suffered emotional distress and related physical injuries and damages.

## COUNT II
### Violation of M.G.L. Chapter 214, § 1C – All Defendants

96. Jane Doe reasserts and incorporates herein each and every allegation in the preceding paragraphs of this Complaint as if set forth fully in this count of the Complaint.

97. Jane Doe satisfied the prerequisites to the filing of this action.

98. As described above, Mr. Van Amburgh sexually harassed and sexually abused Jane Doe.

99. Based on the conduct of the Town, the School Committee, Dr. Fournier and Ms. Rathbone as described above, the Town, the School Committee, Dr. Fournier and Ms. Rathbone failed to address or remedy adequately the sexual harassment and sexual abuse by Mr. Van

Amburgh, which had the purpose or effect of interfering with the education of Jane Doe by creating an intimidating, hostile, humiliating and sexually offensive educational environment.

100. As a result of the acts of the Defendants, in violation of M.G.L. Chapter 214, § 1C, Jane Doe has suffered emotional distress and related physical injuries and damages.

## COUNT III
### 42 U.S.C. § 1983 – Gerald Fournier, Bonny Rathbone, Town of Palmer and Town of Palmer School Committee

101. Jane Doe reasserts and incorporates herein each and every allegation in the preceding paragraphs of this Complaint as if set forth fully in this count of the Complaint.

102. Jane Doe has satisfied the prerequisites to filing this action.

103. At all relevant times to this Complaint, Defendants Dr. Fournier, Ms. Rathbone, the Town and the School Committee, were acting under color of state law.

104. Defendants Dr. Fournier, Ms. Rathbone, the Town and the School Committee, had a duty to provide and ensure an educational environment for Jane Doe free from sexual advances, requests for sexual favors, other verbal and physical conduct of a sexual nature, and to enforce the regulations, rules, and laws necessary to protect Jane Doe and other female students from the acts of sexual abuse.

105. Defendants Dr. Fournier, Ms. Rathbone, the Town and the School Committee failed to properly train and supervise Mr. Van Amburgh, and failed to properly investigate Mr. Van Amburgh's conduct, including, but not limited to, prior allegations of sexual abuse by other students implicating Mr. Van Amburgh, and at least one police investigation into improper sexual conduct by Mr. Van Amburgh with a female Palmer High School student.

106. By their failure to investigate and failure to take action to stop such conduct by Mr. Van Amburgh, Defendants the Town and the School Committee, adopted and approved a policy, practice and custom tolerating sexual harassment.

107. Defendants Dr. Fournier, Ms. Rathbone, the Town and the School Committee, intentionally, willfully, and without justification did deprive Jane Doe, on grounds of her sex, her rights, privileges, and immunities secured to her by the Constitution and the laws of the United States, including but not limited to, her rights to equal protection of law, due process and to be free from sexual abuse as provided by the Fourteenth Amendment of the Constitution and her right to privacy and to be free from violations of bodily integrity as protected by the Fourth, Fifth, Ninth and Fourteenth Amendments of the Constitution, in violation of 42 U.S.C. § 1983.

108. As a result, Jane Doe has suffered emotional distress and related physical injuries and other damages.

## COUNT IV
## 42 U.S.C. § 1983 – Patrick Van Amburgh

109. Jane Doe reasserts and incorporates herein each and every allegation in the preceding paragraphs of this Complaint as if set forth fully in this count of the Complaint.

110. Jane Doe has satisfied the prerequisites to filing this action.

111. At all relevant times to this Complaint Mr. Van Amburgh was acting under color of state law.

112. Mr. Van Amburgh had a duty to provide an educational environment for Jane Doe free from sexual advances, requests for sexual favors, and other verbal and physical conduct of a sexual nature.

113.    Mr. Van Amburgh did in fact court and, ultimately, engage in sexual intercourse with Jane Doe, who at the time of the courtship and sexual intercourse was a minor student at Palmer High School.

114.    Mr. Van Amburgh intentionally, willfully, and without justification did deprive Jane Doe, on grounds of her sex, of her rights, privileges, and immunities secured to her by the Constitution and the laws of the United States, including but not limited to her rights to equal protection of law, due process and to be free from sexual abuse as provided by the Fourteenth Amendment of the Constitution and her right to privacy, to be free from unreasonable seizures and to be free from violations of bodily integrity as protected by the Fourth, Fifth, Ninth and Fourteenth Amendments of the Constitution, in violation of 42 U.S.C. § 1983.

115.    As a result, Jane Doe has suffered emotional distress and related physical injuries and other damages.

## COUNT V
### Title IX – Town of Palmer and Town of Palmer School Committee
### (20 U.S.C. § 1681 et seq.)

116.    Jane Doe reasserts and incorporates herein each and every allegation in the preceding paragraphs of this Complaint as if set forth fully in this count of the Complaint.

117.    The Town and the School Committee receive federal financial assistance for their public schools, bringing them within the ambit of Title IX.

118.    The Town and the School Committee intentionally, willfully and without justification acted to deprive Jane Doe on the grounds of her sex, of her rights, privileges and immunities secured to her by the laws of the United States, particularly her right to be free from discrimination in education on the basis of her sex as provided by Title IX of Education Amendments of 1972, 20 U.S.C. § 1681.

119. The Town and the School Committee, despite knowledge and adequate opportunity to learn of the misconduct of their agents and employees, adopted, approved, and ratified the acts, omissions, and misconduct of Mr. Van Amburgh and the remaining Defendants.

120. Administrators of Palmer High School and officials of the Palmer Public Schools including Dr. Fournier, members of the School Committee, and possible others, had knowledge that female students at Palmer High School had been subjected to sexual advances, requests for sexual favors and other verbal and physical conduct of a sexual nature by Mr. Van Amburgh.

121. Appropriate officials or administrators at Palmer High School and Palmer Public Schools were made aware of Mr. Van Amburgh's actions and behavior through, among other ways, direct observation of Mr. Van Amburgh's inappropriate conduct with female students or from complaints by other female students or their families. The appropriate officials or administrators failed to take corrective measures.

122. As a result, Jane Doe has suffered emotional distress and related physical injuries and other damages.

## COUNT VI
### Negligent Retention and Supervision – Town of Palmer, Town of Palmer School Committee, Gerald Fournier, and Bonny Rathbone

123. Jane Doe reasserts and incorporates herein each and every allegation in the preceding paragraphs of this Complaint as if set forth fully in this count of the Complaint.

124. Based on the conduct described above the Town, the School Committee, Dr. Fournier and Ms. Rathbone were aware of or should have been aware of the fact that Mr. Van Amburgh posed a substantial risk and danger to their students, and that Mr. Van Amburgh exhibited propensities for engaging in sexual harassment, sexual abuse, or otherwise inappropriate behavior toward female students.

125. By the conduct described above, the Town, the School Committee, Dr. Fournier and Ms. Rathbone failed to exercise due care in that they did little to investigate prior accusations of Mr. Van Amburgh's propensities to harm female students and that Defendants did not take the corrective action necessary to prevent Mr. Van Amburgh from continuing to pose a threat to their students.

126. By the conduct described above, the Town, the School Committee, Dr. Fournier and Ms. Rathbone failed to exercise due care in that they did little to properly probe incidences observed by administrators, or other employees or agents, of Palmer High School of Mr. Van Amburgh's inappropriate conduct with female students or treatment of female students, and Defendants failed to take corrective action necessary to prevent Mr. Van Amburgh from continuing to pose a threat to their students.

127. Despite Mr. Van Amburgh's lack of experience demonstrating his suitability to counsel students, and his lack of suitability to have unsupervised access to minor female students, and despite the fact that Mr. Van Amburgh had demonstrated inappropriate behavior toward female students, sufficient to require a formal reprimand, the Town, the School Committee, Dr. Fournier and Ms. Rathbone still retained Mr. Van Amburgh as a counselor at Palmer High School.

128. Additionally, the Town, the School Committee, Dr. Fournier and Ms. Rathbone permitted and/or failed to supervise Mr. Van Amburgh as Mr. Van Amburgh closely interacted with female students in an inappropriate manner and engaged in other activities that Defendants knew, or should have known, posed substantial danger to female students at Palmer High School.

129. The failure of the Town, the School Committee, Dr. Fournier and Ms. Rathbone to exercise due care through their continued retention and supervision of Mr. Van Amburgh proximately caused the injury of which Jane Doe complains.

## COUNT VII
### Intentional Infliction of Emotion Distress – All Defendants

130. Jane Doe reasserts and incorporates herein each and every allegation in the preceding paragraphs of this Complaint as if set forth fully in this count of the Complaint.

131. At the time he assaulted Jane Doe, Mr. Van Amburgh knew Jane Doe was a minor student at Palmer High School. Mr. Van Amburgh also proudly bragged about his conquests of female students, including gloating about a contest between him and another employee at Palmer High School to see who could sleep with the most female students and the use of a belt system to keep a tally total for the competition.

132. Following Van Amburgh's resignation, Jane Doe was vilified and ostracized by various students and staff.

133. By their conduct described above, Defendants intended to inflict emotional distress, or knew or should have known that emotional distress suffered by Jane Doe, was the likely result of their conduct.

134. Defendants' conduct described above was extreme and outrageous, beyond all possible bounds of decency and utterly intolerable in a civilized community.

135. Defendants' actions were the cause of Jane Doe's emotional distress and related physical injuries.

136. Jane Doe's emotional distress, as described in the foregoing paragraphs was and is severe and of such a nature that no reasonable person could be expected to endure it.

## COUNT VIII
### Negligent Infliction of Emotional Distress – All Defendants

137. Jane Doe reasserts and incorporates herein each and every allegation in the preceding paragraphs of this Complaint as if set forth fully in this count of the Complaint.

138. Defendants owed a duty of care to Jane Doe.

139. Defendants breached that duty of care, as described above.

140. As a proximate result of Defendants' conduct described above, Jane Doe has suffered emotional distress.

141. As described above, the physical harm suffered by Jane Doe, was, and continues to be, manifested by objective symptomalogy.

142. A reasonable person would have suffered emotional distress under the circumstances and facts described above.

## COUNT IX
### Assault and Battery – Patrick Van Amburgh

143. Jane Doe reasserts and incorporates herein each and every allegation in the preceding paragraphs of this Complaint as if set forth fully in this count of the Complaint.

144. Based on Mr. Van Amburgh's conduct described above, Mr. Van Amburgh intended to contact or touch Jane Doe in a harmful and offensive manner and Mr. Van Amburgh did in fact place Jane Doe in imminent fear of such harmful and offensive contact or touching.

145. Jane Doe, as a minor high school student at the time of the alleged sexual conduct, does not have the capacity to consent to sexual conduct with a guidance counselor at her High School. *See, e.g., Chancelor v. Pottsgrove,* 502 F.Supp.2d 695 (E.D.Pa. 2007).

146. As described above, Mr. Van Amburgh directly inflicted harm on Jane Doe by, among other acts, sexually abusing and sexually molesting Jane Doe.

147.  As a result of Mr. Van Amburgh's conduct, Jane Doe continues to suffer emotional distress.

## RELIEF REQUESTED

WHEREFORE, Jane Doe demands that Judgment enter against defendants on the above claims applicable to such parties and order that the following damages be awarded:

a. Compensatory damages including emotional distress damages;

b. Punitive damages;

c. Reasonable attorneys' fees and costs;

d. Interest; and

e. Such other relief as the Court may deem appropriate.

THE PLAINTIFF DEMANDS A TRIAL BY JURY ON ALL CLAIMS SO TRIABLE.

The Plaintiff,
JANE DOE
By Her Attorneys:

Dated: June 3, 2011

*/s/ Jeffrey E. Poindexter*
Jeffrey E. Poindexter – BBO #631922
Bulkley, Richardson and Gelinas, LLP
1500 Main Street, Suite 2700
Springfield, MA  01115
Tel:  (413) 781-2820
Fax: (413) 272-6806

1127896