**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

CIVIL ACTION NO. 11-30155-KPN

Jane Doe,                                                           )
                            Plaintiff                              )
                                                                    )
v.                                                                  )
                                                                    )
Gerald Fournier as Superintendent of Palmer Public Schools,        )
Palmer Public Schools,                                             )
Town of Palmer,                                                     )
Town of Palmer School Committee,                                   )
Gary A. Blanchette as a Member of the Town of Palmer School Committee,   )
Mary A. Salzmann, as a Member of the Town of Palmer School Committee,    )
David M. Lynch, as a Member of the Town of Palmer School Committee,      )
James St. Amand, as a Member of the Town of Palmer School Committee,     )
Robert Janasiewicz, as a Member of the Town of Palmer School Committee,  )
Maureen R. Gallagher, as a Member of the Town of Palmer School Committee, )
Bonny Rathbone, as Former Principal of Palmer High School and            )
Patrick Van Amburgh,                                               )
                                                                    )
                            Defendants                             )

## DEFENDANT PATRICK VAN AMBURGH'S
## MEMORANDUM OF LAW IN SUPPORT OF HIS MOTION TO DISMISS

Now comes the defendant Patrick Van Amburgh and hereby submits this memorandum in support of his Motion to Dismiss.

The headings of this memo are organized to correspondence to the counts of plaintiff's complaint in which the defendant Patrick Van Amburgh has been named. The counts in which the defendant has been named are I, II, IV, VII, VIII and IX.

## FACTS

Solely and only for the purposes of this instant motion, as pursuant to Federal R. Civ. P. 12(b)(6), the defendant accepts as true all factual allegations, as opposed to labels and conclusions, as contained in plaintiff's complaint. The defendant has continually and consistently denied any and all inappropriate behavior with the plaintiff.

## STANDARD OF REVIEW

30

A court may dismiss all or part of a complaint that "fail[s] to state a claim upon which relief can be granted." Fed.R.Civ.P. 12(b)(6). In considering a motion to dismiss, the court may only consider "the facts alleged in the complaint, any documents either attached to or incorporated in the complaint and matters of which [the court] may take judicial notice." E.E.O.C. v. St. Francis Xavier Parochial Sch., 117 F.3d 621, 624 (D.C. Cir. 1997). To survive a motion to dismiss made pursuant to Rule 12(b)(6), a complaint must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009).

In evaluating a Rule 12(b)(6) motion, the Court construes the complaint "in favor of the plaintiff, who must be granted the benefit of all inferences that can be derived from the facts alleged." Schuler v. United States, 617 F.2d 605, 608 (D.C. Cir. 1979) (internal quotation marks omitted). However, factual allegations, even though assumed to be true, must still "be enough to raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). Moreover, the Court "need not accept inferences drawn by plaintiff if such inferences are unsupported by the facts set out in the complaint. Nor must the court accept legal conclusions cast in the form of factual allegations." Kowal v. MCI Commc'ns Corp., 16 F.3d 1271, 1276 (D.C. Cir. 1994).

## ARGUMENTS

### Count I
### Plaintiff has failed to state a claim for
### M.G.L. 151C under Massachusetts law

A. Statutory Language prohibits claims against Individuals

Plaintiff erroneously includes Defendant Van Amburgh in Count I of her complaint, alleging a violation of M.G.L. c. 151C. Massachusetts law 151C applies to educational institutions, not individuals. The court cannot apply c. 151C to Defendant Van Amburgh, an individual. Therefore, the Plaintiff failed to state a claim upon which relief can be granted, and the Court must dismiss count I pursuant to Rule 12(b)(6) under the Federal Rules of Civil Procedure.

Courts must interpret plain and unambiguous statutes according to the statutes' ordinary meaning. Commonwealth v. Russ R., 744 N.E.2d 39, 43 (Mass. 2001). GL c. 151C § 1(b) defines educational institution as:

2

any institution for instruction or training, including but not limited to secretarial schools, business schools, academies, colleges, universities, primary and secondary schools, which accepts applications for admission from the public generally and which is not in its nature distinctly private, except that nothing herein shall be deemed to prevent a religious or denominational educational institution from selecting its students exclusively from adherents or members of such religion or denomination or from giving preference in such selection to such adherents or members.

GL c. 151C § 2(g) states that it shall be an unfair educational practice for an educational institution to sexually harass students in any program or course of study in any educational institution. GL c. 151C § 1 does not define educational institution as an individual who performs teaching or guidance counseling work at an educational institution. The definition only covers scholastic entities, not individuals. GL c. 151C § 2(g) only applies to educational institutions, and by definition cannot apply to individuals. See Morrison v. Northern Essex Community College, 56 Mass. App. Ct. 784, 785 (2002), Footnote 2 (stating that a complaint under GL c. 151C and its Federal Equivalent, Title IX, was dismissed as to all individuals named, with only the scholastic entity remaining as a defendant); See also Donovan v. Mount Ida College, 1997 US Dist. LEXIS 23048 at 2 (GL c. 151C claim brought by plaintiff only against educational institution, not the individual who committed the sexual harassment while working for the educational institution). Therefore, Defendant Van Amburgh does not fall within the scope of GL c. 151C, and the court should dismiss this count against him.

B. Plaintiff's prior opposition and allowance to go forward at MCAD was incorrect.

In *Complainant's Opposition to Respondent's Motion to Dismiss*, paragraph seven, presented at the Massachusetts Commission Against Discrimination (hereinafter MCAD) level of litigation, the Plaintiff argued that an individual may be found liable under GL c. 151C § 1 definition for educational institution. See Exhibit A.

First, the Plaintiff cites to MCAD v. Blaine Beauty Career School & Supplies, 29 MDLR 28 (2007). In Blaine, the plaintiffs alleged their instructor at a hair design school sexually harassed them. Id. The Blaine decision remained in the MCAD forum, and specifically states that the respondents did not appear for the hearing. Id. The court in Blaine cites 804 CMR § 1.21(8), indicating that the hearing officer is holding a default hearing due to the respondents' failure to appear. In a default hearing under 804 CMR § 1.21(8), if the respondents fail to appear, the hearing officer will hold a hearing, listen to arguments, and accept evidence from the

3

complainant without giving the respondent the opportunity to argue his or her side. 804 CMR §
1.21(8)(d). The hearing officer decided to hold the individual instructor and the educational
institution jointly and severally liable. Blaine, 29 MDLR at 30. Had the individual respondent
appeared, he would have had the opportunity to present his arguments, specifically that GL c.
151C does not apply to individual actors. The Blaine decision is misleading due to the
respondents' failure to appear, and should not be controlling on the issue as to whether GL c.
151C can apply to an individual respondent or defendant who is not an educational institution.

Next, the Plaintiff cites to the article written by Kathy McCabe, *MCAD: probable cause
for harassment by teacher*, Boston Globe, April 12, 2009. *Complainant's Opposition to
Respondent's Motion to Dismiss*, paragraph seven. McCabe's article covers a student who was
sexually harassed in a Revere school. McCabe, supra. The article is skewed. It does not
specifically state against whom MCAD found probable cause in the discrimination charge. Since
probable cause could have been found against the school only, the court should not find this
article persuasive in Plaintiff's argument that individuals may be liable under GL c. 151C as
educational institutions.

Finally, the plaintiff cites to Hope v. San-Ran, Inc., 8 MDLR 1195 (1986). The Hope
case involves a complainant who is an employee of the respondent, who alleges she was sexually
harassed at work by her supervisors and her entity employer. *Id.* The hearing officer decided that
the woman's supervisors were liable for aiding and abetting the employer sexually harassing her.
Id. at 17-18.

The Hope case is not persuasive for determining whether GL c. 151C applies to an
individual as an educational institution. GL c. 151B and GL c. 151C are written differently to
cover different entities. GL c. 151B § 1 defines employer by stating that:

> The term "employer" does not include a club exclusively social, or a fraternal
> association or corporation, if such club, association or corporation is not
> organized for private profit, nor does it include any employer with fewer than six
> persons in his employ, but shall include the commonwealth and all political
> subdivisions, boards, departments and commissions thereof. Notwithstanding the
> provisions of any general or special law nothing herein shall be construed to bar
> any religious or denominational institution or organization, or any organization
> operated for charitable or educational purposes, which is operated supervised or
> controlled by or in connection with a religious organization, and which limits
> employment to members of the same religion or from taking any action with
> respect to matters of employment, discipline, faith, internal organization, or
> ecclesiastical rule, custom, or law which are calculated by such organization to
> promote the religious principles for which it is established or maintained.

4

This definition expressly excludes entities that the legislature did not intend it to encompass. It does not expressly exclude individuals. Therefore, the term employer can apply to individuals.

GL c. 151C § 1 expressly limits the definition of "educational institution" to institutions for instruction or training, supra. The definition goes on to give examples. Id. Although the statute does not limit these examples, they are all examples of educational institutions. Nowhere does this statute suggest that it applies to individuals.

Lastly, the petitioner in the Hope case only managed to bring a claim against individual respondents, and not the employer, by invoking GL c. 151B § 4(5). Hope, 8 MDLR 1195. GL c. 151B § 4(5) states it shall be an unlawful practice… for any person, whether an employer or an employee or not, to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this chapter or attempt to do so. There is no corresponding provision under GL c. 151C, which states that GL c. 151C applies to individuals. If the petitioner in Hope had to invoke this section in order to bring individuals into her claim under GL c. 151B, and GL c. 151C does not have any such provision, then the Hope case cannot apply to Count 1 of Plaintiff's complaint, alleging a violation of GL c. 151C.

Since the Hope case applies GL c. 151B, and not GL c. 151C to determine individual liability, it is not applicable in the current case, which involves alleged sexual harassment in the educational setting. GL c. 151B covers sexual harassment in the workplace and covers employers. GL c. 151C covers sexual harassment in educational institutions, and covers educational institutions. GL c. 151B defines employer in such a way which includes individuals. and GL c. 151C defines educational institutions in such a way that it does not encompass individuals. Therefore, the Plaintiff's claim against Defendant Van Amburgh individually under GL c. 151C must fail.

### C. Title IX

Federal law also supports that GL c. 151C does not apply to individuals. Title IX is the federal law equivalent to GL c. 151C. *See* Bloomer v. Becker College, 2010 US Dist. LEXIS 82997 at 17 (Mass. 2010) (noting that Title IX is the federal equivalent of GL c. 151C for sexual harassment claims). In Booker v. City of Boston, 2001 US Dist. LEXIS 1400 at 7 (Mass. 2001) the court held that Title IX does not apply to individuals; it applies to educational institutions. Since Title IX is the federal equivalent to GL c. 151C, Title IX does not apply to individuals, and only applies to educational institutions, and GL c. 151C § 1 does not define educational institution as an individual, supra, plaintiff's claim against Defendant Van Amburgh alleging

violation of GL c. 151C fails because Defendant Van Amburgh is an individual, not an educational institution.

> D. As alleged in Plaintiff's complaint there was not any
> Sexual Harassment as required under Twombly Pleading Standard

Even assuming GL c. 151C applies to Defendant Van Amburgh as an individual, the statute still does not substantively apply to him. GL c. 151C § 1 defines sexual harassment as:

> any sexual advances, requests for sexual favors and other verbal or physical
> conduct of a sexual nature when: (i) submission to or rejection of such advances,
> requests or conduct is made either explicitly or implicitly a term or condition of
> the provision of the benefits, privileges or placement services or as a basis for the
> evaluation of academic achievement; or (ii) such advances, requests or conduct
> have the purpose or effect of unreasonably interfering with an individual's
> education by creating an intimidating, hostile, humiliating or sexually offensive
> educational environment.

The Plaintiff does not allege facts or claim that Defendant Van Amburgh explicitly or implicitly made any alleged sexual advances, the acceptance or rejection thereof being a term or condition of the provision of the benefits, privileges, or placement services or as a basis for the evaluation of achievement. Therefore, Plaintiff has waived her claim to the extent of quid pro quo sexual harassment under GL c. 151C.

Assuming GL c. 151C applies to individuals as educational institutions, the Court still must dismiss the Plaintiff's complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure. Under the pleading standard set forth in Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955 (2007), the Plaintiff has failed to state a claim upon which relief can be granted. Specifically, the Plaintiff has failed to plead facts beyond only bald assertions and conclusions.

The Plaintiff makes the following allegations in her complaint. Plaintiff alleges that she was vilified and ostracized by students and staff members. Complaint, paragraph 70. Plaintiff alleges that following the school's termination of Defendant Van Amburgh, one teacher continued to keep a picture of Defendant Van Amburgh prominently displayed on her desk. Complaint, paragraph 71. Plaintiff alleges that following Defendant Van Amburgh's termination, she lost many friends, was treated as an outcast, her grades suffered, her attendance suffered, her self esteem suffered, her relationship with her parents suffered and her relationship with many people she knew suffered.

Under Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955 (2007), the court ruled that a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (citing to the Twombly

6

standard). A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that he defendant is liable for the misconduct alleged. Id. The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Id. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief. Id. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. Id.

Plaintiff's allegations that she faced a hostile school environment due to sexual harassment do not meet the Twombly standard, and must be dismissed. Plaintiff does not plea in her complaint that Defendant Van Amburgh's alleged invitations to share in intimate relations created a hostile work environment. Rather, she pleads in Paragraphs 70 – 72 that the treatment she received from third parties caused a hostile educational environment, and that this treatment came about through Defendant Van Amburgh's termination, not his alleged acts of sexual harassment.

Since the plaintiff failed to plead that sexual acts caused her to suffer from a hostile environment under GL c. 151C, and GL c. 151C prohibits sexual harassment, the plaintiff's claim fails under the Twombly standard to plead facts which meet the elements of the cause of action alleged. Therefore, the Court must dismiss the plaintiff's GL c. 151C claim.

Additionally, assuming plaintiff alleged facts that withstand the first prong of the Twombly test, Plaintiff fails the plausibility prong of the Twombly standard. In Ashcroft v. Iqbal, 129 S.Ct. 1937 (2009), the plaintiffs claimed that the defendants had discriminated against them based on race, religion, or national origin. The Court in Ashcroft considered the defendants' argument that they created post-September eleventh policy to prevent terrorist attacks, and these measures coincidentally lead to the arrest of people who were Arabic Muslims. Id. at 1951. The Court determined that the facts plausibly suggested that the defendants were trying to keep suspected terrorists in secure conditions until they were cleared of terrorist activity. Id. at 1952.

In this case, assuming the plaintiff alleged adequate facts to meet the first prong of the Twombly test, these facts do not plausibly suggest that Plaintiff's hostile educational environment was caused by Defendant Van Amburgh's alleged sexual harassment. The facts as alleged plausibly suggest that any hostile educational environment the Plaintiff faced was a direct result of reactions from third parties, whose reactions resulted from Defendant Van Amburgh being terminated by the school, not sexual harassment. Since the Plaintiff did not

allege adequate facts to survive the Twombly standard, the Court must dismiss Plaintiff's Count for relief under GL c. 151C.

### E. Conclusion

In sum, the Court must dismiss Count I of plaintiff's complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure for failing to state a claim as to Defendant Van Amburgh. Count I claims Defendant Van Amburgh violated GL c. 151C. Defendant Van Amburgh is an individual, and GL c. 151C does not apply to individual persons, but to educational institutions. Therefore, Plaintiff's claim fails because Defendant Van Amburgh is not within the scope of GL c. 151C.

Even erroneously assuming that GL c. 151C applies to individuals, Defendant Van Amburgh still does not fall within its scope. For a defendant to violate GL c. 151C, s/he must either commit quid pro quo sexual harassment, explained supra, or create a hostile work environment caused by sexual harassment. GL c. 151C § 1(e). Plaintiff fails to allege sexual harassment under the quid pro quo theory, and fails to properly allege facts indicating that sexual harassment from Defendant Van Amburgh caused a hostile educational environment. *Twombly*, supra. Assuming erroneously that Plaintiff did allege facts that Defendant Van Amburgh caused a hostile educational environment through sexual harassment meeting the Twombly standard, those facts still do not pass the plausibility test set forth in Twombly and explained in Ashcroft, supra. For the foregoing reasons, the Court must dismiss Count I of the Plaintiff's complaint against Defendant Van Amburgh.

### COUNT II
### Plaintiff fails to state a claim for relief under c 214 § 1C

M.G.L. 214 Section 1C states: "A person shall have the right to be free from sexual harassment, as defined in chapter one hundred and fifty-one B and one hundred and fifty-one C. **The superior court shall have the jurisdiction to enforce this right and to award the damages and other relief provided in the third paragraph of section 9 of chapter 151B. Any such action shall be commenced in the superior court within the time allowed by said section 9 of said chapter 151B.** No claim under this section that is also actionable under chapter 151B or chapter 151C shall be brought in superior court unless a complaint was timely filed with the Massachusetts commission against discrimination under said chapter 151B." **[Emphasis Added].**

8

By Massachusetts law, M.G.L. 214 Section 1C requires the plaintiff to file her complaint in Massachusetts superior court in order to obtain relief.

In addition, as argued previously in this memo under Count I, the plaintiff has failed to satisfy the standard of review for a complaint by alleging more than "labels and conclusions" in support of her claim under M.G.L. c151C. "If the factual allegations in the complaint are too meager, vague, or conclusory to remove the possibility of relief from the realm of mere conjecture, the complaint is open to dismissal." SEC v. Tambone, 597 F.3d 436, 442 (1st Cir. 2010), citing Twombly, 550 U.S. at 555.

## COUNT IV
### Plaintiff fails to state a claim for relief in her complaint
### for which the defendant may be sued under 42 U.S.C. § 1983?

42 USC 1983 states that:

> "Every person who, under color of any statute . . . subjects . . . any citizen of the
> United States . . . to the deprivation of any rights, privileges, or immunities
> secured by the Constitution and laws, shall be liable to the party injured in an
> action at law, suit in equity, or other proper proceeding for redress". Doe v. Old
> Rochester Regional Sch. Dist., 56 F. Supp. 2d 114 (D. Mass. 1999)

To maintain such a cause of action, a plaintiff first must allege **official** conduct, that is, the occurrence of some act or omission undertaken under color of state law. Roche v. John Hancock Mut. Life Ins. Co., 81 F.3d 249, 253 (1st Cir. 1996).

A plaintiff also must allege that the defendants' acts or omissions deprived them of a federally-secured right. Baker v. McCollan, 443 U.S. 137, 142 (1979); Nieves v. McSweeney, 241 F.3d 46, 53 (1st Cir. 2001).

Claims brought under 42 U.S.C. § 1983 implicate, by necessity, the fourteenth amendment. As a general rule, whether "state action" is present in the context of a claim brought under 42 U. S. C. § 1983, the ultimate determination is simply whether the § 1983 defendant has brought the force of the State to bear against the § 1983 plaintiff in a manner the Fourteenth Amendment was designed to inhibit. Blum v. Yaretsky, 457 U.S. 991, 1013 (U.S. 1982).

Furthermore, 42 U.S.C. § 1983 provides a private right of action, when two parts are satisfied. The first mandatory part requires that an act be committed under color of state law. A public employee acts under color of state law while acting in his official capacity or while exercising his responsibilities pursuant to state law. West v. Atkins, 487 U.S. 42, 50 (1988).

9

A. Defendant was not acting under color of law

Plaintiff's allegations in her complaint support that the defendant was not acting under color of state law or within his scope of employment when the alleged incidents occurred. Scope of employment is determined by the following factors: if, but only if (a) it is of the kind he is employed to perform; (b) it occurs substantially within the authorized time and space limits; (c) it is actuated, at least in part, by a purpose to serve the master, and (d) if force is intentionally used by the servant against another, the use of force is not unexpectable by the master. Nichols v. Land Transp. Corp., 223 F.3d 21, 23 (1st Cir. Me. 2000.) In addition, "if an agent's conduct complained of involves only a duty arising from the contract between him and his principal and, therefore, due solely to the principal, then no liability on his part to third parties exists; but if that conduct also involves a duty to third persons -- a duty imposed by law arising out of the circumstances -- then such third person has a right of action against the agent, if he fails in performing this duty, and the contractual relation to the principal does not interpose a defence." Coe v. Ware, 271 Mass. 570, 573 (Mass. 1930)

Under Massachusetts law, the defendant was a licensed guidance counselor at Palmer High School. Consequently, the defendant's scope of employment was limited to his conduct within Palmer High School.

While in his own private home, the defendant could not be exercise his responsibilities as a public employee. The alleged sexual misconduct between the defendant and plaintiff occurred at the defendant's private home. Moreover, this conduct did not occur during school hours, nor did it occur on school property.

The alleged incidents clearly did not serve Palmer School District nor did the School District expect such conduct. Although the conduct may violate ethical responsibilities, they do not violate responsibilities under federal law. There is little basis to conclude that the defendant was acting within his official capacity at home, as a guidance counselor, under color of state law.

B. No deliberate indifference

The defendant did not subject the plaintiff to the type of fourteenth amendment violation that § 1983 was created to protect. The defendant would have to demonstrated a deliberate indifference to the imminent violation of the plaintiff's rights. Farmer v. Brennan, 511 U.S. 825, 834, 128 L. Ed. 2d 811, 114 S. Ct. 1970 (1994). Further, the violation would have to show more

than negligence, but also show that the defendant knew of and disregarded an excessive risk to plaintiff's health and safety. Id. at 835, 837.

As written in plaintiff's complaint, the surrounding circumstances of the alleged incidents do not demonstrate that the defendant demonstrated deliberate indifference. In addition, there is no evidence in plaintiff's complaint that the defendant took an excessive risk to plaintiff's health and safety.

According to the plaintiff's complaint, the plaintiff had allegedly visited the defendant's home on two separate occasions. Each alleged occasion involved intimate contact. The plaintiff stated that she spent between four and five hours total at the defendant's home during the two occasions. During the both trips, plaintiff drove herself to the defendant's home. The first trip ended with kissing and the second trip ended with sexual intercourse followed by a long period of time in which the plaintiff remained at the defendant's apartment.

The plaintiff was legally capable of consenting to the advances and in fact did consent through her conduct. The plaintiff returned for a second encounter when she could have declined and there was no indication that the defendant was keeping the plaintiff against her will. Presumably, the plaintiff could have left at any time.

As plead in her complaint, the plaintiff was not subjected to the defendant's deliberate indifference but was an active participant in the alleged intimate encounters. The plaintiff was not deprived of her bodily integrity due to her complacency.

### C. No Duty

In educational settings, a special custodial relationship is sometimes recognized between schools and students. The First Circuit expressed reluctance to the idea that there is no constitutional duty to protect. However, "[F]rom a commonsense vantage, [the plaintiff] is not just like a prisoner in custody who may be owed a broad (but far from absolute) "duty to protect." Id. at 134. For liability to be imposed, plaintiffs would have to show that the defendant acted with "deliberate indifference" to an imminent violation of the plaintiff's rights. See also Farmer, 511 U.S. at 834. The Supreme Court has emphasized that in this context "deliberate indifference entails something more that mere negligence . . . ." Farmer, 511 U.S. at 835. Instead, the public official must "know of and disregard an excessive risk to . . . health or safety . . . ." Id. at 837. Further, the conduct alleged, would have to "shock the conscience". See Canty v. Old Rochester Regional Sch. Dist., 54 F. Supp. 2d 66, 71 (D. Mass. 1999).

11

The facts alleged in plaintiff's complaint do not support such a duty. the defendant did not maintain a custodial relationship over the plaintiff. First, the plaintiff was not assigned to the defendant for guidance purposes. Second, the alleged incidents occurred outside of the control of state authority. Although she would have been compelled to attend school due to her age, the defendant was under not held to a higher standard **after school ended**. (See Willhauck, 164 F. Supp. 2d. at 133, finding parents still maintain primary responsibility for the child, compulsory school attendance does not create the sort of special relationship that would trigger heightened protection under the due process clause).

### D. Defendant did not deprived the plaintiff of a federal protected right

The second mandatory part of a § 1983 claim requires that plaintiffs "must allege an act or omission which deprived them of a "federally-protected right." Doe v. Town of Bourne, 2004 U.S. Dist. LEXIS 10021, *14 (D. Mass. May 28, 2004). However, the Due Process Clause of the Fourteenth Amendment . . . does not transform every tort committed by a state actor into a constitutional violation. The Due Process Clause is intended to prevent government from abusing its power, or employing it as an instrument of oppression." Willhauck v. Town of Mansfield, 164 F. Supp. 2d 127, 132 (D. Mass. 2001).

Plaintiff's complaint is void of what exact federally secured right did the defendant deprived the plaintiff of? Plaintiff's complaint states that defendant "had a duty to provide an education environment ... free from sexual advances, requests for sexual favors, and other verbal and physical conduct of a sexual nature." (Compl. ¶ 112). In the complaint however, the plaintiff does not identify where that "duty" comes from and its relationship to any federal protected right.

The plaintiff does state under its count that defendant did "engage in sexual intercourse with the plaintiff ... who was a minor student." (Compl. ¶ 113).

Immediately after the plaintiff summarily states in the complaint that the defendant has violated any and all of her federal rights, privileges, immunities and laws. (Compl. ¶ 114). Once again, the plaintiff does not however identify or explain why the nature of defendant's sexual actions deprived the plaintiff of any of her federal protected rights.

To state in a complaint that the defendant deprived the plaintiff of any and all federal rights and laws provides the same guidance to the court as if the plaintiff did not cite any federal rights and laws.

To only plead "labels and conclusions" is insufficient. "A suit will be dismissed if the complaint does not set forth 'factual allegations, either direct or inferential, respecting each

12

material element necessary to sustain recovery under some actionable legal theory.'" United States ex rel. Hutcheson v. Blackstone Med., Inc., 2011 WL 2150191, at *5 (1st Cir. June 1, 2011), quoting Gagliardi v. Sullivan, 513 F.3d 301, 305 (1st Cir. 2008). A court should not have to guess at or assume the actionable legal theory.

### D. Title IX claims do not apply to individual defendants

As written in plaintiff's complaint, the defendant Mr. Patrick Van Amburgh is an individual. (Compl ¶12).

"Title IX prohibits gender-based discrimination in a wide array of programs and activities undertaken by educational institutions. Cohen v. Brown Univ., 991 F.2d 888, 894 (1st Cir. 1993). It provides in pertinent part that "[n]o person . . . shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a). The statute's enforcement machinery includes an implied private right of action through which an aggrieved party may seek money damages. Gebser v. Lago Vista Indep. Sch. Dist., 524 U.S. 274, 283-84 (1998). Since this private right of action extends only to claims against the educational institution itself, Lipsett v. Univ. of P.R., 864 F.2d 881, 901 (1st Cir. 1988), the plaintiffs' Title IX claim perforce fails as to all the individual defendants. The Fairhaven School Committee is, however, potentially liable." See Frazier v. Fairhaven School Committee, 276 F.3d 52 65. (1st Cir. 2002).

In Fitzgerald v. Barnstable School Committee, ___ U.S. ___, 129 S.Ct. 788 (2009), the U.S. Supreme Court established that a plaintiff is not statutorily precluded for suing under Title IX. The Court, however, did not change the law that individuals could be sued under Title IX.

### F. Conclusion

The defendant has failed to state his actionable legal theory sufficiently in his complaint for a 42 U.S.C. § 1983 violation.to surive a motion to dismiss. Count IV is insufficient as a matter of law because the plaintiff does not state which federally protected right the defendant deprived the plaintiff in violation of the Trombly pleading standard.

In addition, as plead in the complaint the alleged sexual intercourse occurred not during school time and was away from school. As plead, the sexual conduct did not relate to the defendant's position as a school employee. In addition, the facts plead do not show the

13

defendant demonstrated a deliberate indifference to the imminent violation of the plaintiff's rights.

## Count VII
### Plaintiff fails to state a claim for relief
### for *Intentional* Infliction of Emotional Distress

Under Massachusetts law, to prevail on their claim for intentional infliction of emotional distress (IIED), the plaintiffs must establish "(1) that the defendant intended to inflict emotional distress, or knew or should have known that emotional distress was the likely result of his conduct, but also (2) that the defendant's conduct was extreme and outrageous, beyond all possible bounds of decency and utterly intolerable in a civilized community, (3) the actions of the defendant were the cause of the plaintiff's distress, and (4) the emotional distress suffered by the plaintiff was severe and of such a nature that no reasonable person could be expected to endure it." Tetrault v. Mahoney, Hawkes & Goldings, 425 Mass. 456, 466 (Mass. 1997).

All elements of IIED must be demonstrated in order for a Plaintiff to recover damages. "[T]he door to recovery [is] opened but narrowly and with due caution" (internal quotations omitted). Agis v. Howard Johnson Co., 371 Mass. 140, 144, 355 N.E.2d 315 (1976). Liability cannot be predicated upon "mere insults, indignities, threats, annoyances, petty oppressions or other trivialities," nor is it enough "that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by "malice[.]"Restatement Second of Torts § 46, comment d (1965). However, the extremity or the outrageousness of the conduct is the main focus on a claim for IIED. The conduct must be so "outrageous in character," and so "extreme in degree," as to go "beyond all possible bounds of decency." Krauss v. Lawrence Memorial/Regis College Nursing & Radiology Program, 27 Mass. L. Rep. 442 LEXIS 8, 9 (Mass. Super. Ct. 2010). Lastly, the standard for extreme and outrageous conduct is very stringent. Id. at 8.

Given the heightened standard, as plead in her complaint the plaintiff will not be able to succeed on her claim of IIED. The plaintiff fails to identify in her complaint what emotional distress she suffered that was exactly attributable to the defendant Mr. Van Amburgh.

A. Bragging

14

the plaintiff must prove that the defendant Mr. Van Amburgh intended to inflict emotional distress on her or should have known that the distress would be a likely result of his conduct. As plead in plaintiff's complaint, Mr. Van Amburgh bragged about and was involved in a competition involving sleeping with female students (Compl. ¶s 34-36). There is nothing in plaintiff's complaint to indicate that these specific alleged actions were intentionally intended by the defendant to cause harm to the plaintiff. There is also nothing in plaintiff's complaint to indicate that these alleged actions resulted in anyway to the plaintiff's emotional distress. The language in plaintiff's complaint regarding these statements does not even mention the plaintiff by name.

### B. Sexual Activity

The defendant Mr. Van Amburgh's alleged conduct did not breach the threshold of extreme or outrageous behavior.

Although the plaintiff was a student where the defendant Mr. Van Amburgh worked, when the alleged incidents occurred, no boundaries were crossed during school hours or on school grounds. The plaintiff, while outside of school, had the legal capacity to consent to sexual intercourse under Massachusetts law.

According to her pleadings, the plaintiff was a willing participant in the alleged sexual intercourse between her and the defendant Mr. Van Amburgh. Since the plaintiff was of legal age to consent and there was no allegation she was forced to do anything with the defendant Mr. Van Amburgh then, the defendant's behavior cannot meet the legal standard for extreme or outrageous. See Beecy v. Pucciarelli, 387 Mass. 589, 596 441 N.E.2d 1035 (1982) (claim alleging intentional infliction of emotional distress properly dismissed where defendant's conduct cannot be characterized as extreme and outrageous); Richey v. American Automobile Ass'n, 380 Mass. 835, 839, 406 N.E.2d 675 (1980) (even if the trier of fact inferred that plaintiff's supervisor made a bad, unjust, and unkind decision to fire employee who was "tightly strung," plaintiff still failed to make out a plausible case of "outrage").

### C. License Revocation Proceedings

In the plaintiff's complaint she identifies allegations allegedly supporting her claim for emotional distress. "Jane Doe has suffered and will continue to suffer emotional distress as a result of the actions and inactions Mr. Van Amburgh and the Defendants." (Compl. ¶ 73). "Although the DOE hearing was originally scheduled for January 2010, it was ultimately conducted in August and September 2010 due to the dilatory tactics of Mr. Van Amburgh and

15

his counsel." (Compl. ¶ 80). "Jane Doe's emotional distress regarding testifying was escalated by the continued and intentional delays in the process by Mr. Van Amburgh and his counsel." (Compl. ¶ 81). "Jane Doe was intentionally subjected by Mr. Van Amburgh and his counsel to a humiliating and emotionally traumatizing process at the DOE." (Compl. ¶83)

The Plaintiff attempts to hold the defendant Mr. Van Amburgh responsible for emotional distress connected to the process, which took place at the DOE hearing regarding Mr. Van Amburgh's teaching license.

First, the defendant Mr. Van Amburgh did not call the plaintiff as a witness. Second, the assertion that any cross examination questions asked of her by the defendant Mr. Van Amburgh's counsel contributed to her emotional distress is obscured and without any basis in fact. Ethical obligations require and due process allows the defendant Mr. Van Amburgh to present a defense and question his accusers. Third, alleging "dilatory tactics" as the basis for emotional distress without pleading supporting information is exacting the "labels and conclusions" that violate the Twombly pleading standard.

### D. Summary

Based on the facts contained in the complaint, a court would be required to further enhance the facts on its own to identify how any of the events alleged in the plaintiff's complaint caused the plaintiff to suffer emotional distress.

The plaintiff attempts to bridge the obvious deficiency in the elements of IIED by using bold assertions about how the process at DOE made her feel.

Under the Twombly pleading standard, this will not suffice. The type of terms used by the plaintiff in their complaint are exactly the "labels and conclusions" that are to be avoided.

Based on the above the plaintiff's claim for IIED should be dismissed.

### Count VIII
### Plaintiff fails to state a claim for relief for Negligent
### Infliction of Emotional Distress under the *Twombly* pleading standard

Plaintiff did not plead sufficient facts for the Court to find the defendant Mr. Van Amburgh liable for negligent infliction of emotional distress (NIED). To maintain an action for NIED, plaintiff must prove negligence, emotional distress, causation, physical harm manifested by objective symptomology, and that a reasonable person would have suffered emotional distress

16

under the circumstances of the case. Sullivan v. Boston Gas Co., 414 Mass. 129, 132, 605 N.E.2d 805 (1993); Payton v. Abbott Labs, 386 Mass. 540, 547, 437 N.E.2d 171 (1982).

The negligence portion of an NIED claim must contain four parts. To prevail on a claim of negligence, a plaintiff must show (i) that the defendant owed a duty of care to the plaintiff; (ii) that the defendant breached that duty; (iii) resulting in damages; (iv) that were caused by the breach. Chao v. Ballista, 772 F. Supp. 2d 337 (D. Mass. 2011).

Plaintiff must do more than allege "mere upset, dismay, humiliation, grief and anger" and instead must corroborate her mental distress claim with enough objective evidence of [physical] harm to convince" the Court that her claims present a sufficient likelihood of genuineness to go to trial. Bresnahan v. McAuliffe, 47 Mass. App. Ct. 278, 284, 712 N.E.2d 1173 (1999), quoting Sullivan v. Boston Gas Co., 414 Mass. at 137-38. Elizabeth v. George W. Prescott Publ. Co., 12 Mass. L. Rep. 119 (Mass. Super. Ct. 2000).

Plaintiff's negligence claim must fail for numerous reasons. The facts of the intentional infliction of emotional distress (IIED) claim are the basis for the NIED claim. Moreover, it is settled law that "it is not possible for intentional sexual misconduct also to be negligent," and a "negligence claim which is premised on the same acts which are contended to be the basis of an intentional sexual misconduct claim is **not legally supportable**. There is no duty to defend in these circumstances." Fireman's Fund Ins. Co. v. Bromberg, 9 Mass. L. Rep. 725, (Mass. Super. Ct. 1999).

The Plaintiff's claim fails because there is no evidence of physical harm suffered by Jane The plaintiff, which is manifested by objective symptomalogy. Plaintiff alleged that she lost many friends, was treated as an outcast, her self esteem suffered and other relationships she had suffered. As stated above, these facts point toward upset, dismay, grief and possibly humiliation. As a matter of law, these feelings, absent objective symptoms, do not produce objective evidence to demonstrate sufficient likelihood of genuineness. Bresnahan v. McAuliffe, 47 Mass. App. Ct. 278, 284.

Under the Twombly pleading standard, this will not suffice. The type of terms used by the plaintiff in their complaint are exactly the "labels and conclusions" that are to be avoided.

Based on the above, the plaintiff's claim for NIED must be dismissed.

## Count IX
## Plaintiff has failed to state a claim because
## under Massachusetts law the plaintiff consented

### A. Overview

The U.S. District Court of Massachusetts, in reviewing the state based claims of assault and battery, is bound to apply state law. These claims are asserted under the theory of supplemental jurisdiction, pursuant to 28 U.S.C § 1331 federal question jurisdiction. The Supreme Judicial Court has "assume[d], without deciding, . . . that a tort action has the same regulatory effect as a State law." Sawash v. Suburban Welders Supply Co., 407 Mass. 311, 315 (Mass. 1990). A federal court sitting in diversity or exercising supplemental jurisdiction over state law claims must apply state substantive law. Hoyos v. Telecorp Communs., Inc., 488 F.3d 1, 5 (1st Cir. P.R. 2007). The Supreme Judicial Court provides guidance in matters of state law to the U.S. District Court of Massachusetts.

The U.S. District Court will examine "the pronouncement of the highest court in order to discern the contours of that state's laws". Barton v. Clancy, 632 F.3d 9, 17 (1st Cir. Mass. 2011). When the highest State court has not address an issue, Federal Courts attempt to determine, "how that court likely would decide the issue." Id. at 318. Moreover, the Court will look to the relevant statutory language, analogous decisions of the state supreme court, decisions of the lower state courts, and other reliable sources of authority. Id. The torts of assault and battery are well settled in Massachusetts.

Massachusetts recognizes a charge of assault as containing the following elements:

1) The intentional creation of an apprehension of immediate physical harm by means of an overt gesture,

2) The apprehension required is that which would put a reasonable person in fear of impending harmful contact.

Mere words are not sufficient for the tort of assault, some overt act however insubstantial, is required. Benson v. Norwood Dodge Sales, 12 Mass. L. Rep. 121, 12 Lexis (Mass. Super. Ct. 2000).

Battery is:

1) intentional offensive touching of a person and

18

2) done without consent. <u>Moore v. Eli Lilly & Co.</u>, 626 F. Supp. 365, 368 (D. Mass. 1986).

Plaintiff states in her complaint that "Jane Doe went to Mr. Van Amburgh's apartment twice over the course of three or four days." (Compl. ¶ 56). Plaintiff also states in her complaint "[d]uring Jane's Doe's second visit to Mr. Van Amburgh's apartment, Mr. Van Amburgh's apartment, Mr. Van Amburgh had sexual relations with Jane Doe." (Compl. ¶ 57).

## B. Consent

Consent may provide a defense to the claim of assault and battery. However, an individual requires the legal capacity to consent, both criminally and civilly, before such consent may be given. Under Massachusetts law, the age of consent to sexual intercourse is 16 years old. ALM GL ch. 265, § 23. The Supreme Judicial Court has interpreted this statute as follows:

"The Legislature as a matter of public policy, for the protection of female children under the age of sixteen, has fixed an age below which a female child is to be held legally incapable of consenting to assaults of this character. The same acts, which are made by the Legislature punishable as a statutory crime, also do a civil wrong to the victim of such an assault. We think that the principle established by the Legislature is applicable in civil as well as in criminal cases." <u>Glover v. Callahan</u>, 299 Mass. 55, 59 (Mass. 1937).

The Supreme Judicial Court demonstrates due deference to the policy molding authority of the legislature. As a result, lower courts are guided by this deference by recognizing that "the law conclusively presumes that those under sixteen years of age are not sufficiently mature to understand fully the physical, mental, and emotional consequences of sexual intercourse, and are therefore incapable of making a rational decision about whether to consent to such conduct." <u>Commonwealth v. Dineen</u>, 70 Mass. App. Ct. 1, 6 (Mass. App. Ct. 2007). At the time of the alleged incident with Mr. Van Amburgh, plaintiff was seventeen years and eight months old. Accordingly, Plaintiff was sufficiently mature to understand the consequences of sexual intercourse and therefore capable of consenting to the contact.

## C. Chancelor Inapplicable

Plaintiff cites to Chancelor v. Pottsgrove, 502 F.Supp.2d 690 (E.D.Pa. 2007) in her complaint. Chancelor is a Pennsylvania case. The case is in direct contradiction to Massachusetts law.

Plaintiff erroneously relies on a U.S. District Court ruling in the Third Circuit involving substantive law. In Chancelor v. Pottsgrove, 501 F.Supp.2d 695, 708 (E.D.Pa. 2007), the U.S. District Court held that "a high school student who is assigned to a teacher's class does not have the capacity to welcome that teacher's physical sexual conduct... A teacher who has sex with a high school student who is assigned to his class discriminates against the student on the basis of sex in violation of Title IX."

First, this precedent does not bind the U.S. District Court for the District of Massachusetts. Moreover, Mr. Van Amburgh was not the plaintiff's assigned guidance counselor. Lastly, within Massachusetts, the issue of an individual's capacity to consent was well settled. See Glover, 299 Mass. 55 and Dineen, 70 Mass. App. Ct. 1 (Mass. App. Ct. 2007). The plaintiff, as a matter of substantive state law, retained the legal capacity to consent to Mr. Van Amburgh's alleged advances.

Consent to Mr. Van Amburgh's contact may be inferred by and through plaintiff's conduct. The Supreme Judicial Court "held that in Massachusetts, as under the common law, 'the words "against [the victim's] will," in the standard definitions [of rape], mean exactly the same thing as "without the victim's consent."' Commonwealth v. Davidson, 68 Mass. App. Ct. 72, 75 (Mass. App. Ct. 2007). Plaintiff drove to Mr. Van Amburgh's house twice under her own volition.

Lastly, plaintiff returned to Mr. Van Amburgh's, apartment alone for a second night, after the first alleged contact.

## D. Conclusion

In paragraph 145 of her complaint, the plaintiff describes herself "as a minor high school student at the time of the alleged sexual conduct [in relation to her] capacity to consent to sexual conduct.

Mr. Van Amburgh did not commit an assault and battery against the plaintiff. The plaintiff knows that she was over the age of 16 and did not plead otherwise in her complaint. The plaintiff never states in her complaint that she did not consent to any of the alleged contact by the defendant. In addition, plaintiff consented to all contact through her conduct.

20

Moreover, the State Legislature and the Supreme Judicial Court have expressed that an individual has the legal capacity to consent at sixteen years old. Plaintiff possessed the legal capacity to consent to such touchings because M.G.L. ch. 265 § 23 provides that 16 years old is the age of consent. The plaintiff was seventeen years and eight months old. The legislature has expressed a public policy by statute and the Supreme Judicial Court recognizes the authority of the legislature in such matters.

The plaintiff has failed to satisfy the standard of review for a complaint by alleging more than "labels and conclusions" in support of her claim under Assault and Battery "If the factual allegations in the complaint are too meager, vague, or conclusory to remove the possibility of relief from the realm of mere conjecture, the complaint is open to dismissal." SEC v. Tambone, 597 F.3d 436, 442 (1st Cir. 2010), citing Twombly, 550 U.S. at 555.

## MEMO CONCLUSION

Wherefore, for the foregoing reasons the defendant submits that the plaintiff's complaint should be dismissed as against the defendant, Patrick Van Amburgh.

Respectfully Submitted
he Defendant Patrick Van Amburgh

By _Hal Etkin_

Hal Etkin, Esquire
83 State Street, Suite 300
Springfield, MA 01193
BBO # 543869
(413) 739-9950
(413) 732-7515

Date: August 24, 2011