UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

JANE DOE,                        )
            Plaintiff            )
                                 )
            v.                   ) C.A. NO. 11-cv-30155-MAP
                                 )
GERALD FOURNIER,                 )
as Superintendent of Palmer      )
Public Schools, et al.,          )
            Defendants           )

MEMORANDUM AND ORDER REGARDING
DEFENDANTS' MOTION TO DISMISS AND
DEFENDANT VAN AMBURGH'S MOTION TO DISMISS
(Dkt. Nos. 21 & 29)

February 22, 2012

PONSOR, U.S.D.J.

## I. INTRODUCTION

This case arises out of alleged sexual relations that

Defendant Patrick Van Amburgh had with Plaintiff Jane Doe,

while he was employed as a guidance counselor at Palmer High

School, which Plaintiff attended as a student.  Plaintiff

has brought this action against Defendants Gerald Fournier,

the superintendent of Palmer Public Schools; the Town of

Palmer; the Town of Palmer School Committee; individual

members of the Town of Palmer School Committee Gary A.

Blanchette, Mary A. Salzmann, David M. Lynch, James St.

Amand, Robert Janasiewicz, and Maureen R. Gallagher; Bonny

Rathbone, the former principal of Palmer High School; and
Patrick Van Amburgh.  The action alleges various violations
of state statutory and common law, 42 U.S.C. § 1983, and
Title IX of the Education Amendments of 1972.

All of the Defendants except Van Amburgh have filed a
joint motion to dismiss the complaint.  (Dkt. No. 21.)
Defendant Van Amburgh has filed a separate motion to
dismiss.  (Dkt. No. 29.)  Plaintiff opposes both motions.
(Dkt. Nos. 27 & 32.)  For the reasons stated below, the
court will allow in part and deny in part Defendants' joint
motion to dismiss and allow in part and deny in part
Defendant Van Amburgh's motion to dismiss.

## II. BACKGROUND

The facts alleged in the amended complaint are as
follows:

Defendant Van Amburgh was hired as a guidance counselor
at Palmer High School on August 29, 2005.  In 2006, he was
also appointed as an assistant football coach.  In September
2006, Van Amburgh was connected with a police investigation
of an alleged rape of a student by a teacher at Palmer High
School.  The investigation reported that Van Amburgh had sex

with a student.  Van Amburgh denied the allegations, but admitted to failing to maintain proper boundaries with students and to using poor judgment.  The complaint alleges that some or all of the Defendants knew about the sexual allegations against Van Amburgh, but failed to perform a reasonable investigation.  One law enforcement official noted that Palmer High School officials wanted to "sweep the situation under the rug."  (Am. Compl. ¶ 31.)

According to Plaintiff, Van Amburgh did not change his relationship with female students after the 2006 investigation.  Instead, he openly failed to maintain proper boundaries with students, bragged about having sexual relations with female students, and bragged about participating in a "contest" with another school employee to see who could have sex with the most female students.  As part of the contest, Van Amburgh and the other employee allegedly collected the belts of the students they had sex with as proof.

Defendant Fournier, the superintendent of Palmer Public Schools, testified under oath that he believed that, at various times, Van Amburgh was too "cozy" with female

students.  He observed a female student in Van Amburgh's office wearing a short skirt with her feet on Van Amburgh's desk and took action to stop the conduct.  Fournier also observed that Van Amburgh kept numerous pictures of female students on his wall and directed him to remove the pictures.  At one point, Fournier sought to have Van Amburgh transferred to a middle school, where he would be less likely to act inappropriately with younger female students.  The transfer never occurred.  Neither Fournier nor the other Defendants took any other actions to investigate or reprimand Van Amburgh.

In October 2008, Van Amburgh began showing a personal interest in Plaintiff Jane Doe, who was a seventeen-year-old senior at Palmer High School at the time.  Plaintiff was the "stat girl" for the school football team, of which Van Amburgh was assistant coach.  Van Amburgh began talking to Plaintiff at football games and practices.  He obtained her cell phone number and, between October 3 and October 18, 2008, the two exchanged over 1,300 text messages.  At Van Amburgh's invitation, Plaintiff went to Van Amburgh's apartment twice over the course of several days.  During her

second visit, she had sexual relations with Van Amburgh. After the visit, Van Amburgh continued to invite Plaintiff to his apartment for sex, but she declined.

After Plaintiff's mother learned of Plaintiff's sexual relationship with Van Amburgh, she complained to Defendants Fournier and Salzman, a member of the Town of Palmer School Committee.  On October 20, 2008, Fournier placed Van Amburgh on paid administrative leave pending an investigation of the allegations.  On November 17, 2008, Fournier notified Van Amburgh that he would be terminated after the investigation for having sexual intercourse with a student, inappropriate interactions with other female students, misuse of work time (including sending thousands of text messages to female students), and visiting inappropriate web sites during school time.  Van Amburgh submitted a letter of resignation the same day.

Following Van Amburgh's resignation, Plaintiff was "vilified and ostracized" by students and staff members who were on good terms with Van Amburgh.  (Id. ¶ 70.)  As a result, Plaintiff's grades, attendance, self esteem, and relationships with others suffered.

On December 1, 2008, Fournier reported Van Amburgh's resignation to the Commissioner of the Massachusetts Department of Elementary and Secondary Education ("DOE"). On March 24, 2009, the DOE sent Van Amburgh a letter notifying him that it had found probable cause to revoke his educator's license.  The DOE's reasons for revocation were substantially similar to Fournier's findings.

Van Amburgh requested a hearing regarding the DOE's finding of probable cause.  Plaintiff was subpoenaed to testify at the hearing, which was originally scheduled for January 2010.  The hearing was eventually postponed to August and September 2010, allegedly due to Van Amburgh's "dilatory tactics."  Plaintiff's emotional distress was escalated by the delays of the hearing.  During the hearing, Plaintiff was "intentionally subjected" by Van Amburgh and his counsel to humiliating treatment.  (Id. ¶¶ 80, 83.)

On April 1, 2009, Plaintiff filed a claim with the Massachusetts Commission Against Discrimination ("MCAD"), asserting claims under Mass. Gen. Laws chs. 151C and 214. The MCAD issued a probable cause finding regarding Plaintiff's allegations, and on June 3, 2011, Plaintiff

filed a complaint in this court.  After Plaintiff filed her complaint, the DOE issued a memorandum of decision and order revoking Van Amburgh's educator's license.  On January 23, 2012, Plaintiff filed an amended complaint to incorporate by reference the findings of fact made by the DOE.  The amended complaint contains nine causes of action[1]:

1.  Count I alleges violations of Mass. Gen. Laws ch. 151C by all Defendants.

2.  Count II alleges violations of Mass. Gen. Laws ch. 214, § 1C by all Defendants.

3.  Count III alleges violations of 42 U.S.C. § 1983 by Fournier, Rathbone, the Town of Palmer, and the Town of Palmer School Committee.

4.  Count IV alleges violations of 42 U.S.C. § 1983 by Van Amburgh.

5.  Count V alleges violations of Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 <u>et seq.</u>, by

---

[1] It is unclear whether some of these causes of action also include the individual school committee members as defendants.  The Counts only list the School Committee, but the complaint states that the School Committee and its members will be collectively referred to as "the School Committee."  (Am. Compl. ¶ 13.)

the Town of Palmer and the Town of Palmer School Committee.

6.   Count VI alleges negligent retention and
supervision by the Town of Palmer, the Town of Palmer School
Committee, Fournier, and Rathbone.

7.   Count VII alleges intentional infliction of
emotional distress by all Defendants.

8.   Count VIII alleges negligent infliction of
emotional distress by all Defendants.

9.   Count IX alleges assault and battery by Van
Amburgh.

### III. <u>DISCUSSION</u>

Defendant Van Amburgh and the municipal and school
official Defendants have filed separate motions to dismiss.
Because the motions raise many overlapping issues, the court
will consider them together.

### A. <u>Legal Standard</u>.

To survive a Rule 12(b)(6) motion to dismiss, a
complaint must contain "sufficient factual matter" to state
a claim for relief that is actionable as a matter of law and
"plausible on its face." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662,
___, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (<u>quoting</u>

Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S.Ct.
1955, 167 L.Ed.2d 929 (2007)); Fed. R. Civ. P. 12(b)(6).
While the court must accept all well-pleaded facts as true
and draw all reasonable inferences in favor of a plaintiff,
"[t]hreadbare recitals of the elements of a cause of action,
supported by mere conclusory statements, do not suffice" to
state a plausible claim for relief.  Id.  Dismissal is
appropriate if the complaint does not set forth "factual
allegations, either direct or inferential, respecting each
element necessary to sustain recovery under some actionable
legal theory."  Centro Medico del Turabo, Inc. v. Feliciano
de Melecio, 406 F.3d 1, 6 (1st Cir. 2005) (internal citation
omitted).

B. Claims Against School Committee Members.

        The individual members of the Town of Palmer School
Committee are sued in their official capacities only.
Plaintiff's claims against these individuals are thus, in
actuality, claims against the Town of Palmer.  See Will v.
Mich. Dep't of State Police, 491 U.S. 58, 71, 109 S.Ct.
2304, 105 L.Ed.2d 45 (1989) ("[A] suit against a state
official in his or her official capacity is not a suit

against the official but rather is a suit against the official's office.  As such, it is no different from a suit against the State itself." (internal citation omitted)); Murphy v. Town of Natick, 516 F. Supp. 2d 153, 158 (D. Mass. 2007) ("Under both Massachusetts and federal law, a suit against a municipal police department or its chief (in his or her official capacity) is deemed to be a suit against the municipality itself.").

Every claim that Plaintiff has brought against these individuals in their official capacities also includes the Town of Palmer and the Town of Palmer School Committee as defendants.  Consequently, Plaintiff's claims against the school committee members are superfluous, as Plaintiff may recover any damages she is entitled to through her claims against the municipal defendants.  See Wine & Spirits Retailers, Inc. v. Rhode Island, 418 F.3d 36, 42 n.1 (1st Cir. 2005) (explaining that, because the presence of the plaintiff company's principal and an individual defendant sued in his official capacity as a state employee is "essentially superfluous," the court will "opt for simplicity and proceed as if [the company] and the State

were the only parties"); <u>Stavropoulos v. Firestone</u>, 361 F.3d 610, 615 n.4 (11th Cir. 2004) (noting that, in its summary judgment order, the district court dismissed the plaintiff's statutory claims against individuals sued in their official capacities as redundant).

The inclusion of numerous individual defendants creates clutter that may confuse a jury, and dismissing the claims against these defendants would in no way prejudice Plaintiff.  The court will therefore dismiss all claims against the individual school committee members: Gary A. Blanchette, Mary A. Salzmann, David M. Lynch, James St. Amand, Robert Janasiewicz, and Maureen R. Gallagher.[2]

C. <u>Count I: Mass. Gen. Laws ch. 151C</u>.

Plaintiff has brought a claim against all Defendants for violations of Mass. Gen. Laws ch. 151C, § 2(g), which makes it an unfair educational practice "[t]o sexually harass students in any program or course of study in any

------

[2] Defendants Fournier and Rathbone are also sued in their official capacities as the superintendent of Palmer Public Schools and former principal of Palmer High School, respectively.  However, Defendants have not moved for dismissal of the claims against Fournier and Rathbone on this ground.

educational institution." Mass. Gen. Laws ch. 151C, § 2(g).
Despite this broad language, however, for whatever reason,
Chapter 151C permits only a narrow class of students to seek
a legal remedy for sexual harassment.

The only procedure for bringing a claim under chapter
151C is described in section 3(a).  Under that section,
"[a]ny person <u>seeking admission</u> as a student to any
educational institution, or enrolled as a student in a
<u>vocational training institution</u>" may file a complaint of
unfair educational practices with the Massachusetts
Commission Against Discrimination ("MCAD").  <u>Id.</u>, § 3(a)
(emphasis added).  Chapter 151C does not provide a private
right of action for a plaintiff who does not fall into one
of these two categories.[3]  <u>See Shervin v. Partners
Healthcare Sys., Inc.</u>, No. 10-10601-RWZ, 2010 Wl 5185384, at

---

[3] Plaintiff argues that this court has already
determined that a plaintiff like Jane Doe may assert a claim
for violations of Mass. Gen. Laws, ch. 151C § 2(g).  <u>Doe v.
Williston Northampton School ("Williston")</u>, 766 F. Supp. 2d
310, 312-13 (D. Mass. 2011).  However, this court in
<u>Williston</u> held only that section 2(g)'s protection is not
limited to students who are seeking admission to an
educational institution or those enrolled in a vocational
training institution -- a proposition that Defendants do not
contest.  <u>Id.</u>  It did not consider the question of the
proper vehicle for bringing section 2(g) claims.

*1 (D. Mass. Dec. 15, 2010) ("The 151C private right of action extends only to '[a]ny person seeking admission as a student to any educational institution, or enrolled as a student in a vocational training institution.'" (citing Mass. Gen. Laws ch. 151C, § 3(a))).[4]

The proper vehicle for bringing claims of violations of section 2(g) by plaintiffs who do not fall under section 3(a) is Mass. Gen. Laws ch. 214, § 1C, which provides that:

> A person shall have the right to be free from sexual harassment, as defined in chapter one hundred and fifty-one B and one hundred and fifty-one C.  The superior court shall have the jurisdiction to enforce this right and to award the damages and other relief provided in the third paragraph of section 9 of chapter 151B.

Mass. Gen. Laws ch. 214, § 1C; see also Bloomer v. Becker College, No. 09-11342-FDS, 2010 WL 3221969, at *6 (D. Mass. Aug. 13, 2010) ("Claims for sexual harassment in education under Chapter 151C are actionable in Superior Court pursuant to Mass. Gen. Laws. Ch. 214, § 1C."); Morrison v. Northern Essex Comm. Coll., 56 Mass. App. Ct. 784, 786, 780 N.E.2d

---

[4] The odd shape of the statute is admittedly puzzling. The explanation for why the Legislature provided a remedy only for vocational students and school applicants is elusive.  Certainly the exposure of other groups of students to potential harassment seems no less serious.

132 (2002) ("Violations of c. 151C are actionable in Superior Court." (citing Mass. Gen. Laws, ch. 214, § 1C)).

Plaintiff contends that she may bring a claim under either chapter 214, section 1C or chapter 151C, section 3(a).  Plaintiff's interpretation of the statutory scheme, however, would render chapter 214 largely superfluous -- at least with regard to sexual harassment as defined by chapter 151C -- and is inconsistent with the interpretation advanced by the Supreme Judicial Court of Massachusetts.  See Lowery v. Klemm, 446 Mass. 572, 578, 845 N.E.2d 1124 (2006) (holding that chapter 214, section 1C "extends to employees and students protection that is not otherwise available under G.L. c. 151B and c. 151C; it does not duplicate the relief provided by those statutes").

Prohibiting Plaintiff from bringing a claim under chapter 151C, section 3(a) would not, as Plaintiff argues, be contrary to the legislature's intent to recognize claims by all students for sexual harassment under chapter 151C, section 2(g).  On the contrary, chapter 214 does provide a method to redress chapter 151C, section 2(g) claims of sexual harassment by students such as Plaintiff and gives

14

Plaintiff the right to damages and other relief through litigation.  Consequently, the court finds that Plaintiff, who is neither seeking admission to an educational institution nor enrolled in a vocational training institution, may not bring a claim under chapter 151C, section 3(a); she must seek redress under chapter 214, section 1C instead.  The court will dismiss Count I against all Defendants.

D. <u>Count II: Mass. Gen. Laws ch. 214, § 1C</u>.

As discussed in the preceding section, Mass. Gen. Laws ch. 214, § 1C provides certain plaintiffs with a private right of action for violations of Mass. Gen Laws ch. 151C, § 2(g).  Defendants argue, however, that although a plaintiff may generally bring a claim for violations of section 2(g) under chapter 214, Plaintiff's claim here does not fall within the ambit of chapter 214.

First, Defendants argue that chapter 151C makes it an unfair educational practice to sexually harass students in "any educational institution" and Palmer High School is not an educational institution within the meaning of the statute.  Mass. Gen. Laws ch. 151C, § 2(g).  "Educational

institution" is defined as "any institution for instruction or training, including . . . primary and secondary schools, which accepts applications for admission from the public generally and which is not in its nature distinctly private . . . ." Mass. Gen. Laws ch. 151C, § 1(b).  According to Defendants, students who reside in the Town of Palmer attend its public schools, including Palmer High School, as a matter of right, and the school does not "accept applications" for admission, as the statute requires. Consequently, Defendants argue, the statute does not extend to public secondary schools like Palmer High School.

Defendants' interpretation of the statute is unconvincing.  The MCAD has held that chapter 151C "extends to private and public secondary schools." Beagan v. Town of Falmouth Sch. Dep't, 9 MDLR 1209, 1211 (1987).  While not controlling on this court, the MCAD's interpretation of a statute it is charged with enforcing should be given "substantial deference." Dahill v. Police Dep't of Boston, 434 Mass. 233, 239, 748 N.E.2d 956 (2001).  Furthermore, other statutes concerning public schools indicate that public secondary schools, such as Palmer High School, do, at

16

times, "accept applications" for admission.  See, e.g.,
Mass. Gen. Laws ch. 71, § 37H(e) ("If [an expelled] student
does apply for admission to another school or school
district, the superintendent of the school district to which
the application is made . . . .") (emphasis added); id. ch.
76, § 15(d) (laying out procedures for non-resident students
to apply to school districts).  The court, thus, finds that
public secondary schools, including Palmer High School, are
educational institutions as defined by chapter 151C, and
Plaintiff may bring a claim for sexual harassment in Palmer
High School under chapter 214.

     Second, Defendants argue that the state has not waived
its sovereign immunity through either Mass. Gen. Laws ch.
151C or Mass. Gen. Laws ch. 214, § 1C and, thus, Plaintiff
cannot bring claims against a municipality under chapter
214.

     Under Massachusetts law,

     Absent statutory language that indicates by
     express terms a waiver of sovereign immunity, the
     Legislature's intent to subject the Commonwealth
     to liability may be found only when such an intent
     is clear by necessary implication from the
     statute's terms.

17

<u>DeRoche v. Ma. Comm'n Against Discrimination</u>, 447 Mass. 1, 12-13, 848 N.E.2d 1197 (2006).  Because chapter 151C applies to public schools, a necessary implication of the statute's terms is that the state has waived sovereign immunity in order to provide a remedy for students who are sexually harassed in public schools.  <u>See</u> Mass. Gen. Laws ch. 214, § 1C (permitting persons to bring claims for violations of chapter 151C in the superior court).

Third, Defendants argue that chapter 214 does not permit claims against individuals because chapter 151C only provides for actions against "educational institutions." Because the court will dismiss the claims against the individual school committee members, the only individual Defendants who remain in this case are Fournier, Rathbone, and Van Amburgh.

Defendants Fournier and Rathbone are named in their official capacities only.  Claims against individuals in their official capacities are, "in all respects other than name, to be treated as a suit against the entity." <u>Kentucky v. Graham</u>, 473 U.S. 159, 166, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985).  Given that Plaintiff will receive her full remedy,

if she prevails, from the Town and School Committee, and given that Fournier and Rathbone are outside the class of potential defendants identified by the statute, the motion to dismiss as to these two individuals, even in their official capacities, will be allowed.

Defendant Van Amburgh, on the other hand, is sued in his individual capacity.  During the hearing on these motions, Van Amburgh's counsel appeared to concede that chapter 214 permits claims against individuals.  An analysis of the statutory language, however, suggests otherwise.  The chapter 214 private right of action is limited to claims of sexual harassment as defined by chapters 151B and 151C. Plaintiff's claim falls within the chapter 151C definition. Chapter 151C, however, refers only to "educational institutions," whose definition does not include individuals.  Mass. Gen. Laws ch. 151C, § 2 (prohibiting "an educational institution" from engaging in certain unfair practices); id., § 1(b) (defining "educational institution" as "any institution for instruction of training").  The plain language of chapter 151C, thus, does not permit claims against individuals.

Plaintiff attempts to analogize chapter 151C to chapter 151B, which provides for civil actions for violations of chapter 151C.  Mass. Gen. Laws ch. 151B, § 9.  Plaintiff argues that because "virtually unanimous authority supports individual liability under . . . ch. 151B," <u>Meara v. Bennett</u>, 27 F. Supp. 2d 288, 290 (D. Mass. 1998), the same principle should apply to chapter 151C.

The language of chapter 151B, however, is substantially different than that of chapter 151C.  Chapter 151B includes several provisions that specifically refer to individual liability.  Section 4(4A), for example, makes it an unlawful practice for "any <u>person</u> to coerce, intimidate, threaten or interfere with another person in the exercise or enjoyment of any right granted or protected by this chapter."  Mass. Gen. Laws ch. 151B, § 4(4A) (emphasis added).  Likewise, section 4(5) makes it an unlawful practice for "any <u>person</u>, whether an employer or an employee or not, to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this chapter or to attempt to do so."  <u>Id.</u>, § 4(5) (emphasis added).  Those courts that have permitted individual liability under chapter 151B have premised it on

20

these sections.  See, e.g., Morehouse v. Berkshire Gas Co.,
989 F. Supp. 54, 61 (D. Mass. 1997); Chatman v. Gentle
Dental Ctr. of Waltham, 973 F. Supp. 228, 232 n.8 (D. Mass.
1997); Ruffino v. State Street Bank & Trust Co., 908 F.
Supp. 1019, 1047-48 (D. Mass. 1995).

The legislature's decision to include such clear
language in chapter 151B imposing individual liability,
while omitting any such language from chapter 151C, suggests
that individuals cannot be liable in their individual
capacity under chapter 151C.  Because Plaintiff's chapter
214 claim is premised on a violation of chapter 151C,
Plaintiff cannot bring the claim against an individual
Defendant in his individual capacity.  The court will
dismiss Count II against Van Amburgh.

Finally, Defendants contend that, even if Plaintiff
could bring a section 2(g) claim, this court lacks subject
matter jurisdiction over claims under Mass. Gen. Laws ch.
214, § 1C.  Section 1C provides that "[t]he superior court
shall have the jurisdiction to enforce" rights under chapter
151C.  Mass. Gen. Laws ch. 214, § 1C.  According to
Defendants, this language bestows exclusive jurisdiction

over chapter 214 claims in the superior court.

It is clear that this court has jurisdiction over
Plaintiff's chapter 214 claim by virtue of supplemental
jurisdiction.[5]  28 U.S.C. § 1367(a).  The language of
chapter 151C does not and cannot change that analysis.  "[A]
grant of exclusive jurisdiction by a state legislature
cannot divest [a federal] court of subject matter
jurisdiction.  Put simply, a state legislature cannot define
the scope of federal jurisdiction."  <u>Landworks Creations,
LLC v. U.S. Fidelity and Guar. Co.</u>, No. CIV. 05-40072-FDS,
2005 WL 3728719, at *3 (D. Mass. Nov. 15, 2005); <u>see also</u>
<u>Marshall v. Marshall</u>, 547 U.S. 293, 314, 126 S. Ct. 1735,
164 L.Ed.2d 480 (2006) ("Jurisdiction is determined 'by the
law of the court's creation and cannot be defeated by the
extraterritorial operation of a [state] statute . . . , even
though it created the right of action.'" (internal citation
omitted)); <u>Davet v. City of Cleveland</u>, 456 F.3d 549, 554
(6th Cir. 2006) (applying similar analysis to federal
supplemental jurisdiction).

---

[5] The court has original jurisdiction over Counts III
(42 U.S.C. § 1983), IV (42 U.S.C. § 1983), and V (Title IX),
which arise out of the same conduct as Count II.

For these reasons, the court will deny Defendants'
motion to dismiss Count II against the Town and the School
Committee.  Count II against the individual school officials
members, Fournier, Rathbone, and Van Amburgh will be
dismissed.

E. Counts III and IV: 42 U.S.C. § 1983.

A claim under 42 U.S.C. § 1983 must allege that a
defendant, acting under color of state law, acted in a way
that deprived the plaintiff of rights secured by the U.S.
Constitution or by federal law.  42 U.S.C. § 1983.
Plaintiff has brought § 1983 claims against the school
officials and municipal Defendants (Count III) and against
Van Amburgh (Count IV).  Defendants argue that Plaintiff has
failed to allege a deprivation of any federally-protected
right.

Plaintiff alleges that Van Amburgh's sexual harassment
deprived her of her right to bodily integrity, as protected
by the Fourteenth Amendment's Due Process Clause.[6]  It is

---

[6] Plaintiff has been somewhat vague regarding the
foundational right of her § 1983 claims.  The complaint
offers a litany, alleging that Plaintiff has been deprived
of rights

beyond question that the Fourteenth Amendment protects the right to bodily integrity and that right "is necessarily violated when a state actor sexually abuses a schoolchild . . . ." Doe v. Taylor Indep. Sch. Dist., 15 F.3d 443, 451-52 (5th Cir. 1994); see also Stoneking v. Bradford Area Sch. Dist., 882 F.32d 720, 727 (3d Cir. 1989) (holding that a student's right to bodily integrity under the Fourteenth Amendment "encompass[es] a student's right to be free from sexual assaults by his or her teachers"); Doe v. D'Agostino, 367 F. Supp. 2d 157, 172 (D. Mass. 2005) (finding that fifth-grade student's allegations of sexual harassment by teacher were sufficient to support a § 1983 claim based on a

---

> including but not limited to, her rights to equal protection of law, due process and to be free from sexual abuse as provided by the Fourteenth Amendment of the Constitution and her right to privacy and to be free from violations of bodily integrity as protected by the Fourth, Fifth, Ninth and Fourteenth Amendments of the Constitution . . . .

(Am. Compl. ¶¶ 111, 118.)  In their memoranda and at the motion hearing, the parties focused on Plaintiff's substantive due process rights, and the court will do so as well.  Because the court finds that Plaintiff has sufficiently alleged a violation of substantive due process to survive a motion to dismiss, it is not necessary to consider other potential foundational rights, such as equal protection or Title IX.

violation of the student's substantive due process right to bodily integrity).

Defendants argue, however, that the allegations in this case, where the relationship between Van Amburgh and Plaintiff was in some sense consensual, are fundamentally different from the allegations of sexual assault that courts have found to constitute violations of due process.

Some decisional law supports the existence of a due process violation when a teacher engages in a consensual sexual relationship with a student.  See, e.g., Taylor Indep. Sch. Dist., 15 F.3d at 450-52 (holding that a teacher's consensual sexual relationship with a fifteen-year-old student constituted a violation of the student's substantive due process rights); Chancellor v. Pottsgrove Sch. Dist., 501 F. Supp. 2d 695, 713 (E.D. Pa. 2007) (holding that a seventeen-year-old student "lacked the capacity to consent to engage in sexual conduct" with a teacher and, consequently, her allegations of a seemingly-consensual sexual relationship with the teacher were sufficient to state a § 1983 claim based on a violation of substantive due process).

25

Defendant Van Amburgh argues that these decisions are
inapposite because Plaintiff, who was seventeen at the time
of the sexual harassment, was over the age of consent in
Massachusetts.  However, in Chancellor, the court found that
a substantive due process violation was possible even where
the student was over the age of consent.  See Chancellor,
501 F. Supp. 2d at 699 (Plaintiff was seventeen years old at
the time of her sexual relationship with her teacher); 18
Pa. Cons. Stat. §§ 3122.1, 3123 (establishing age of consent
as sixteen for statutory sexual assault and involuntary
deviate sexual intercourse).

Although the law in this specific area is admittedly
sparse, the court is unwilling to allow the motion to
dismiss without discovery, and to find thereby that
consensual sexual relations with a student over the age of
consent can never constitute a substantive due process
violation.  The inherent imbalance of power between a
guidance counselor in a public school and a student may
render opportunistic sexual predation sufficiently shocking,
even with a "consenting" student over sixteen, to form the
basis of a substantive due process claim.  The issue may be

26

revisited on summary judgment.

    1. <u>Van Amburgh</u>.

    Van Amburgh argues that, even if the alleged actions could constitute a substantive due process violation, the § 1983 claim against him should be dismissed because he was not acting "under color of state law," as is required for liability under § 1983.[7]  <u>West v. Atkins</u>, 487 U.S. 42, 48, 108 S. Ct. 2250, 101 L.Ed.2d 40 (1988).

    A public official acts "under color of state law" when he exercises power "possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law."  <u>Id.</u>  An official may act under color of state law even when "he abuses the position given to him by the State."  <u>Id.</u>; <u>see also</u> <u>United States v. Classic</u>, 313 U.S. 299, 326, 61 S.Ct. 1031, 85 L.Ed. 1368 (1941) ("Misuse of power, possessed by virtue of state law

_____

    [7]  Van Amburgh also argues that the § 1983 claim against him should be dismissed because he did not demonstrate deliberate indifference to the violation of Plaintiff's rights.  This argument misstates the elements of a § 1983 claim.  The complaint alleges that Van Amburgh directly violated Plaintiff's rights; it does not allege that he is liable as a supervisor who was deliberately indifferent to a violation of rights.

and possible only because the wrongdoer is clothed with the authority of state law, is action taken 'under the color' of state law.").

Under this standard, even though Van Amburgh's actions were not authorized -- and even prohibited -- by the school, a reasonable jury could nevertheless find that he was acting under the color of state law.  The complaint alleges that Van Amburgh failed to maintain proper boundaries with students on school grounds.  (Am. Compl. ¶¶ 27-28, 33.)  It further alleges that he met Plaintiff through his position as a high school guidance counselor and interacted with Plaintiff in his capacity as an assistant football coach at the high school.  (Id. ¶¶ 47-49.)  It may be inferred from these allegations that Van Amburgh enjoyed the opportunity to harass Plaintiff and solicit sex from her by virtue of the authority he had as a high school guidance counselor and football coach.  The fact that some of the relations he had with Plaintiff took place after school and not on school property does not change the fact that he was "clothed with the authority of state law" at the time.  Classic, 313 U.S. at 326, 61 S.Ct. 1031.

At this stage of the proceedings, Plaintiff's allegations are sufficient to proceed with a § 1983 claim against Van Amburgh.

2. <u>School Officials and Municipal Defendants</u>.

Having concluded that Van Amburgh's sexual harassment of Plaintiff may constitute a violation of her constitutional right to substantive due process, the court must now determine whether the school officials and municipal defendants may be held liable for that violation.

Under <u>Monell v. Dep't of Soc. Servs. of N.Y.C.</u>, a municipality cannot be liable for its employees' constitutional violations under a theory of <u>respondeat superior</u>; it can only be liable when the constitutional violation arises from, or is caused by, a governmental policy or custom. 436 U.S. 658, 690-95, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Likewise, supervisory officials, such as the school officials in this case, cannot be held vicariously liable under § 1983. A supervisor can only be liable if the supervisee's behavior resulted in a constitutional violation and the supervisor's actions or inactions could be characterized as "'supervisory

29

encouragement, condonation or acquiescence' or 'gross negligence amounting to deliberate indifference.'" D'Agostino, 367 F. Supp. 2d at 170.

The complaint alleges that the Town, School Committee, and school officials "failed to properly train and supervise Mr. Van Amburgh, and failed to properly investigate Mr. Van Amburgh's conduct . . . ." (Am. Compl. ¶ 109.)  Through this failure, the complaint alleges, Defendants "adopted and approved a policy, practice and custom tolerating sexual harassment." (Id. ¶ 110.)

For Monell claims based on failure to train, supervise, or discipline, the failure can only be a policy, practice, or custom that is actionable under § 1983 if it "evidences a 'deliberate indifference' to the rights of its inhabitants . . . ." DiRico v. City of Quincy, 404 F.3d 464, 469 n.12 (1st Cir. 2005) (quoting City of Canton v. Harris, 489 U.S. 378, 389, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989)).  At this stage of the litigation, to proceed on her § 1983 claims against both the municipal defendants and the school officials, Plaintiff must thus sufficiently plead deliberate indifference.

30

Although the standard to show deliberate indifference is high, the allegations in the complaint are sufficient to survive a motion to dismiss.  The complaint alleges that school officials knew, or should have known, that Van Amburgh was harassing female students.  The complaint alleges that at least some school officials learned of the allegations from the 2006 police report that Van Amburgh had sex with a student; that Van Amburgh admitted to failing to maintain proper boundaries with students; that Van Amburgh continued to openly fail to maintain proper boundaries with students; that he bragged about his sexual relations with students; that school officials had concerns about his conduct; and that Superintendent Fournier even testified that he believed Van Amburgh was too "cozy" with students. (Am. Compl. ¶¶ 26-38.)  Despite these concerns, the complaint alleges that school officials failed to conduct any investigation of Van Amburgh and failed to discipline him in any way.  (Id. ¶¶ 30, 43.)  The only actions school officials did take were stopping a female student from placing her legs on Van Amburgh's desk, directing Van Amburgh to remove pictures of female students from his

31

office wall, and contemplating -- but never effectuating --
Van Amburgh's transfer to the middle school.  (<u>Id.</u> ¶¶ 39-
42.)

Defendants contend, however, that school officials <u>did</u>
take appropriate action as soon as they became aware of Van
Amburgh's relationship with Plaintiff.  Once Plaintiff's
mother complained to Fournier and Salzman of Van Amburgh's
treatment of Plaintiff, Fournier immediately placed Van
Amburgh on administrative leave pending an investigation of
the allegations.  (<u>Id.</u> ¶ 65.)  Following the investigation,
Fournier suspended Van Amburgh, moved to terminate him, and
reported his resignation to the DOE.  (<u>Id.</u> ¶ 67, 74.)

These contentions may carry weight at a later stage of
this case.  The allegations summarized earlier, which must
be assumed as true on a motion to dismiss, however, are
sufficient to show that school officials had actual notice
of, but failed to investigate or stop Van Amburgh's sexual
harassment of students long before Plaintiff's mother
approached Fournier and Salzman.  Although the actions
Defendants took after the mother's complaint may eventually
defeat Plaintiff's § 1983 claim, it can be sufficiently

inferred from the pleadings that school officials exhibited a "deliberate indifference" to the rights of their students by their earlier failure to investigate and supervise.  Cf. Lipsett v. Univ. of P.R., 864 F.2d 881, 907 (1st Cir. 1988) (holding that summary judgment was inappropriate where Plaintiff actually told her supervisors that she was being sexually harassed and the supervisors did not "take any steps whatsoever to investigate those allegations").

The court will deny Defendants' motion to dismiss the § 1983 claim against the Town of Palmer, the Town of Palmer School Committee, Fournier, and Rathbone.[8]

F. Count V: Title IX.

Title IX of the Education Amendments of 1972 provides that

_____

[8] Defendants also argue that the § 1983 claim must be dismissed pursuant to the doctrine of qualified immunity, which provides public officials immunity from suit under some circumstances.  The First Circuit has rejected the traditional analysis of qualified immunity claims in cases of supervisory liability.  See Camilo-Robles v. Zapata, 175 F.3d 41, 44 (1st Cir. 1999).  The inquiry instead is "whether the supervisor's actions displayed deliberate indifference toward the rights of third parties and had some causal connection to the subsequent [constitutional violation]."  Id.  Since the qualified immunity analysis is substantially identical to the analysis of "deliberate indifference," Defendants' qualified immunity contention lacks merit for the reasons discussed above.

> No person in the United States shall, on the basis
> of sex, be excluded from participation in, be
> denied the benefit of, or be subjected to
> discrimination under any education program or
> activity receiving Federal financial assistance.

20 U.S.C. § 1681(a).  A federal funding recipient can only

be held liable for a teacher's sexual harassment of a

student if an official of the recipient entity had "actual

knowledge of discrimination in the recipient's programs and

fail[ed] adequately to respond."  Gebser v. Lago Vista

Indep. Sch. Dist., 524 U.S. 274, 290, 118 S.Ct. 1989, 141

L.Ed.2d 277 (1998).  Furthermore, the response or lack

thereof "must amount to deliberate indifference to

discrimination."  Id.

Plaintiff alleges that the Town of Palmer and the Town

of Palmer School Committee receive federal financial

assistance for their public schools and, thereby, fall

within the ambit of Title XI.  For the reasons discussed

earlier in the context of Plaintiff's § 1983 claims,

Plaintiff has sufficiently alleged that Defendants had

actual knowledge of discrimination and were deliberately

indifferent to that discrimination.  Defendants' motion to

dismiss Count V will be denied.[9]

---

[9] Plaintiff's prayer for relief includes a request for punitive damages, which Defendants argue are not available under Title IX.

According to the U.S. Supreme Court,

"Title IX's contractual nature has implications for our construction of the scope of available remedies."  One of these implications . . . is that a remedy is "appropriate relief," only if the funding recipient is on notice that, by accepting federal funding, it exposes itself to liability of that nature.

Barnes v. Gorman, 536 U.S. 181, 187, 122 S. Ct. 2097, 153 L.Ed.2d 230 (2002) (internal citations omitted).  On the basis of this principle, the Court has held that, although Title IX does not contain any express remedies, compensatory damages and injunctions are permitted under Title IX because these forms of relief are traditionally available in breach of contract actions.  Id.

Punitive damages, on the other hand, are usually not available for breach of contract.  Id.  While the Court has not directly considered whether punitive damages are available under Title IX, it has relied on its Title IX decisions to hold that Title VI recipients have not implicitly consented to liability for punitive damages and such damages are not permitted under Title VI.  Id. at 188.

Title VI is similar to Title IX in that neither statute contains any express remedies and both are premised on Congress' spending power.  Consequently, several courts in other jurisdictions have held that the Supreme Court's reasoning in Barnes applies to Title IX suits and punitive damages are not available under Title IX.  See, e.g., Mercer v. Duke University, 50 Fed. App'x 643, 644 (4th Cir. 2002); Frechel-Rodriguez v. Puerto Rico Dept. Of Educ., 478 F. Supp. 2d 191, 198 (D. Puerto Rico 2007).

G. <u>Count VI: Negligent Retention and Supervision</u>.

Plaintiff has brought a claim against the Town, the School Committee, Fournier, and Rathbone for negligent retention and supervision of Van Amburgh. All tort claims based on acts of public employees acting within the scope of employment must be brought pursuant to the Massachusetts Tort Claims Act. <u>See</u> Mass. Gen. Laws ch. 258, § 2.

As a threshold matter, Defendants argue that Plaintiff has not pled compliance with the presentment requirement of the Tort Claims Act. Before instituting a civil action for damages against a public employer under the Act, a plaintiff must "present[] his claim in writing to the executive officer of such public employer within two years after the date upon which the cause of action arose . . . ." <u>Id.</u>, §

---

However, punitive damages are available under § 1983 and Massachusetts state law for claims against individuals when the "defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." <u>Smith v. Wade</u>, 461 U.S. 30, 56, 103 S. Ct. 1625, 75 L.Ed.2d 632 (1983); <u>Joyce v. Town of Dennis</u>, 770 F. Supp. 2d 424, 427-28 (D. Mass. 2011). Punitive damages are not available against municipalities. <u>City of Newport v. Fact Concerts, Inc.</u>, 453 U.S. 247, 258-71, 101 S. Ct. 2748, 69 L.Ed.2d 616 (1981). Because the court will not dismiss Plaintiff's § 1983 and state law claims, the court will not dismiss Plaintiff's request for punitive damages outright, at this stage of the litigation.

4.

However, Massachusetts does not require plaintiffs to plead presentment in the complaint. <u>Blair v. City of Worcester</u>, 522 F.3d 105, 110 n.6 (1st Cir. 2008); <u>Vasys v. Metro. Dist. Comm'n</u>, 387 Mass. 51, 55, 438 N.E.2d 836 (1982) ("When a proper presentment has been made, a plaintiff's failure to include, in his complaint, an allegation that all conditions precedent have been performed will have no effect on the outcome of the case."). Defendants bear the burden of establishing that presentment was not made. <u>Federal Ins. Co. v. Boston Water and Sewer Comm'n</u>, 583 F. Supp. 2d 225, 232 (D. Mass. 2008). Defendants have not met that burden here and Plaintiff contends that proper presentment was made by a letter of February 23, 2009, to Fournier and Salzman.

Defendants also argue that the Massachusetts Tort Claims Act only permits actions against the municipality itself; it does not allow for actions against individual defendants. <u>See</u> Mass. Gen. Laws ch. 258, § 2 ("[N]o such public employee . . . shall be liable for any injury or loss of property or personal injury or death caused by his negligent or wrongful act or omission while acting within

37

the scope of his office or employment."). Both Fournier and Rathbone, however, are sued in their official capacities only and the Act shields public employees from <u>personal</u> liability for negligent conduct. See <u>Murphy</u>, 516 F. Supp. 2d at 158 ("Under both Massachusetts and federal law, a suit against a municipal police department or its chief (in his or her official capacity) is deemed to be a suit against the municipality itself.").

Next, Defendants argue that Van Amburgh was not acting within the scope of his employment, as required for liability under the Massachusetts Tort Claims Act. Mass. Gen. Laws ch. 258, § 2 ("Public employers shall be liable for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any public employee while acting within the scope of his office or employment . . . ."). Massachusetts courts look to the common law to define the scope of employment for purposes of the Tort Claims Act, asking "whether the act was in furtherance of the employer's work." <u>Clickner v. City of Lowell</u>, 422 Mass. 539, 542, 663 N.E.2d 852 (1996). The relevant factors are whether the conduct was the kind that

the employee was hired to perform, whether it occurred within the time and space authorized by the employment, and whether it was at least partly motivated by a desire to serve the employer.  Id.

Defendants argue that Van Amburgh's conduct in this case clearly falls outside the scope of his employment. However, Count VI seeks to hold the municipality liable for the negligent actions of school officials in failing to supervise Van Amburgh; it does not seek to hold it liable for Van Amburgh's conduct.  The school officials' alleged failure to supervise, including their alleged failure to investigate allegations of sexual harassment, was within the scope of their employment.

Finally, Defendants argue that Mass. Gen. Laws ch. 258, § 10(j) bars Plaintiff's claims.  Section 10(j) prevents a public employer from being liable for

> any claim based on an act or failure to act to
> prevent or diminish the harmful consequences of a
> condition or situation . . . which is not
> originally caused by the public employer or any
> other person acting on behalf of the public
> employer.

Mass. Gen. Laws ch. 258, § 10(j).  Courts have interpreted this section as barring liability where "a plaintiff has

39

been harmed by a condition or situation which was not originally caused by the public employee, and is attributable to the employee only in the sense that the employee failed to prevent or mitigate it." Brum v. Town of Dartmouth, 428 Mass. 684, 694, 704 N.E.2d 1147 (1999) (internal citation omitted).  Here, Defendants argue, the complaint alleges only that Defendants' negligent supervision and retention failed to prevent the harm suffered by Plaintiff; it does not allege that Defendants' actions caused Plaintiff's harm.

Courts have repeatedly held that a claim for negligent supervision alone is barred by section 10(j).  However, a claim for negligent hiring may amount to an affirmative action that is an original cause of the plaintiff's harm. See, e.g., Pettengill v. Curtis, 584 F. Supp. 2d 348, 366-67 (D. Mass. 2008) (comparing the two types of claims). Plaintiff here has not alleged negligent hiring, but has alleged negligent retention.  Although retention is more passive than hiring and may not be sufficient to constitute an original cause under section 10(j), at this early stage, it would be premature to conclude that the school officials'

40

negligent retention of Van Amburgh after learning of his
improper relations with students was not an original cause
of Plaintiff's harm.

The court will deny Defendants' motion to dismiss Count
VI.

H. Count VII: Intentional Infliction of Emotional Distress.

Plaintiff has alleged intentional infliction of
emotional distress by all Defendants.  Public employers and
individuals sued in their official capacities cannot be held
liable for claims arising out of intentional torts.  Mass.
Gen. Laws ch. 258, § 10(c); Kelley v. LaForce, 288 F.3d 1,
12 (1st Cir. 2002).  Consequently, the Town, the School
Committee, Fournier, and Rathbone may not be held liable for
Van Amburgh's intentional tort.

Van Amburgh is sued in his individual capacity and may
be held liable.  To state a claim for intentional infliction
of emotional distress, Plaintiff must plead that (1) the
defendant intended to inflict emotional distress, or knew or
should have known that emotional distress was the likely
result of his conduct; (2) the defendant's conduct was
"extreme and outrageous, beyond all possible bounds or

41

decency and utterly intolerable in a civilized community";
(3) the defendant's actions caused plaintiff's distress; and
(4) the emotional distress plaintiff suffered was so severe
"that no reasonable person could be expected to endure it."
Tetrault v. Mahoney, Hawkes & Goldings, 425 Mass. 456, 466,
682 N.E.2d 1189 (1997).  Plaintiff has sufficiently pled all
of the elements of a claim for intentional infliction of
distress by Van Amburgh.

With regard to the first element, Van Amburgh argues
that Plaintiff has failed to plead that he intended to
inflict emotional distress on Plaintiff.  However, it is
enough that Defendant knew, or should have known, that his
conduct would result in emotional distress.  Id.  The
allegations in the complaint, at least at this early stage,
are enough for a reasonable person to conclude that Van
Amburgh should have known his exploitive conduct toward a
younger student would result in emotional distress.

With regard to the second element, Van Amburgh argues
that his conduct was not extreme or outrageous, partly
because Plaintiff consented to his sexual advances.  Where
"reasonable people could differ on whether the conduct is

'extreme and outrageous,'" the question should be submitted
to the jury and would be improper to decide on a motion to
dismiss.  <u>Boyle v. Wenk</u>, 378 Mass. 592, 597, 392 N.E.2d 1053
(1979).  The allegations in this case -- including that Van
Amburgh engaged in a contest with another employee to see
who could sleep with the most students -- are such that
reasonable people could differ on their characterization.

Plaintiff has also pled that Van Amburgh's conduct
caused her emotional distress.  (Am. Compl. ¶ 139
("Defendants' actions were the cause of Jane Doe's emotional
distress and related physical injuries.").)

Finally, Plaintiff has pled emotional distress that a
reasonable finder of fact may conclude to be severe.  (<u>Id.</u> ¶
72 ("Jane Doe lost many friends, was treated as an outcast,
her grades suffered, her attendance suffered, her self
esteem suffered, her relationship with her parents suffered
and her relationship with many people she knew suffered.").)

Consequently, the court will allow Defendants' motion
to dismiss Count VII as to the Town, the School Committee,
Fournier, and Rathbone, and deny Van Amburgh's motion to
dismiss Count VII.

43

I. Count VIII: Negligent Infliction of Emotional Distress.

Plaintiff has also alleged negligent infliction of emotional distress by all Defendants.  This claim appears to be premised on Van Amburgh's sexual harassment of Plaintiff and seeks to hold all Defendants liable for Van Amburgh's conduct through the Massachusetts Tort Claims Act.

Under the Massachusetts Tort Claims Act, public employers may be liable for "the negligent or wrongful act or omission of any public employee while acting within the scope of his office or employment . . . ."  Mass. Gen. Laws ch. 258, § 2.  In this case, Van Amburgh was not acting within the scope of his employment when he allegedly sexually harassed Plaintiff.[10]

---

[10] The analysis of the scope of employment under the Massachusetts Tort Claims Act is different from the analysis of acting under color of state law under § 1983.  See Maimaron v. Commonwealth, 449 Mass. 167, 178, 865 N.E.2d 1098 (2007) ("[T]he two concepts -- acting within the scope of employment and acting under color of State law -- do not involve precisely parallel considerations . . . .  The scope of employment issue bespeaks a narrower inquiry and, in certain cases, would allow a fact finder to conclude that an officer who is acting under color of State law for purposes of § 1983 liability is not acting within the scope of his employment . . . .").  Consequently, the court's conclusion that Van Amburgh was acting under color of state law is not dispositive of whether he was acting within the scope of his employment.

As discussed earlier, the test for whether an employee was acting within the scope of his employment involves three factors: whether the conduct was the kind that the employee was hired to perform, whether it occurred within the time and space authorized by the employment, and whether it was at least partly motivated by a desire to serve the employer. Clickner, 422 Mass. at 542, 663 N.E.2d 852.  While some of the alleged sexual harassment occurred on school property during school hours, the conduct in which Van Amburgh allegedly engaged with Plaintiff -- including sending her thousands of text messages and having sexual relations with her in his apartment -- was clearly not the kind that Van Amburgh was hired to perform and was not at all motivated by a desire to serve his employer.  Because Van Amburgh was not acting within the scope of his employment when he committed the alleged tort, the municipality and school officials may not be held liable for his negligence.

Van Amburgh, on the other hand, is named in his individual capacity and may be liable for negligent infliction of emotional distress whether or not he was

45

acting within the scope of his employment.[11]  To state a
claim for negligent infliction of emotional distress by Van
Amburgh, Plaintiff must plead "(1) negligence; (2) emotional
distress; (3) causation; (4) physical harm manifested by
objective symptomatology; and (5) that a reasonable person
would have suffered emotional distress under the
circumstances of the case."  Sullivan v. Boston Gas Co., 414
Mass. 129, 132, 605 N.E.2d 805 (1993).

    For the reasons discussed earlier, Plaintiff has pled
negligence, emotional distress, and causation.  Plaintiff
has also pled that "the physical harm suffered by Jane Doe,
was, and continues to be, manifested by objective
symptomatology," and that "[a] reasonable person would have
suffered emotional distress under the circumstances and

───────────────

    [11] Van Amburgh argues that a claim for negligent
infliction of emotional distress cannot be premised on the
same facts as a claim for intentional infliction of
emotional distress.  However, the fact that two theories of
recovery might be inconsistent at trial does not prevent a
plaintiff from stating both theories at the early pleading
stage.  Fed. R. Civ. P. 8(d)(2) ("A party may set out 2 or
more statements of a claim or defense alternatively or
hypothetically, either in a single count or defense or in
separate ones."); Rodriguez-Suris v. Montesinos, 123 F.3d
10, 20 (1st Cir. 1997) ("Especially at the early stages of
litigation, a party's pleading will not be treated as an
admission precluding another, inconsistent, pleading.").

facts described above." (Am. Compl. ¶¶ 145-146.) While these last allegations are sparse -- Plaintiff, for example, has not pled specifically what physical harm she endured or what objective symptoms she manifested -- at the pleading stage, they are sufficient to put Van Amburgh on notice of the claims against him and raise those claims above a speculative level.

The court will allow Defendants' motion to dismiss Count VIII as to the Town, the School Committee, Fournier, and Rathbone, and deny Van Amburgh's motion to dismiss Count VIII.

J. <u>Count IX: Assault and Battery</u>.

The final count of the complaint alleges assault and battery by Van Amburgh. Under Massachusetts law, battery is defined as harmful or offensive touching. <u>Commonwealth v. Gorassi</u>, 432 Mass. 244, 247, 733 N.E.2d 106 (2000). Assault is either an attempted battery or an act that places someone in immediate fear of a battery. <u>Id.</u>

Van Amburgh argues that the assault and battery claim against him is barred because Plaintiff consented to her sexual relationship with Van Amburgh. Consent is an

absolute defense to assault and battery.  <u>Thibault v. Lalumiere</u>, 318 Mass. 72, 74, 60 N.E.2d 349 (1945).  In this case, however, the question of consent is disputed.  While Van Amburgh contends that Plaintiff was over the age of consent and freely engaged in sexual relations with him, Plaintiff argues that the imbalance of power between her and Van Amburgh made it impossible for her to give consent.  <u>Cf. Chancellor</u>, 501 F. Supp. 2d at 708 ("[A] high school student who is assigned to a teacher's class does not have the capacity to welcome that teacher's physical sexual conduct.").  Because consent is a disputed question of fact, it would be improper to grant Van Amburgh's motion to dismiss this count.

## IV. <u>CONCLUSION</u>

For the foregoing reasons, the municipal and school official Defendants' motion to dismiss (Dkt. No. 21) and Defendant Van Amburgh's motion to dismiss (Dkt. No. 29) are hereby DENIED in part and ALLOWED in part.  All Counts against the individual members of the Town of Palmer School Committee (Gary A. Blanchette, Mary A. Salzmann, David M. Lynch, James St. Amand, Robert Janasiewicz, and Maureen R.

Gallagher) are dismissed.  Count I is dismissed as to all
Defendants; Count II is dismissed as to Fournier, Rathbone,
and Van Amburgh; Count VII is dismissed as to the Town of
Palmer, the Town of Palmer School Committee, Fournier, and
Rathbone; and Count VIII is dismissed as to the Town of
Palmer, the Town of Palmer School Committee, Fournier, and
Rathbone.  Both motions to dismiss are DENIED in all other
respects.  Defendants will file their Answers within twenty
days of this memorandum.  The case is hereby referred to
Magistrate Judge Kenneth P. Neiman for a Rule 16 conference.

It is So Ordered.

/s/ Michael A. Ponsor
MICHAEL A. PONSOR
U. S. District Judge